ALEXANDER B. CLARK *vs.* JUSTIN J. HULL.

Essex. November 5, 1902. — September 4, 1903.

Present: MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Way. Evidence. Words,* "Highway", "Road."

In an action for trespass to the plaintiff's close on a neck of land reached by a causeway, the defendant contended that at the time of the alleged trespass he was in the rightful use of a public way. Ancient records put in evidence showed that there was at the time of those records a highway over and beyond the causeway and that a gate across the causeway was put up to keep cattle in, there being evidence that it was maintained there only during the pasturage season and removed at other times. There was testimony of old men of a road reported to be ancient and of the use of this road from time immemorial by many persons under a claim of right and of repairs made by such persons and by the surveyor of the district, and that the way in controversy was identical with this ancient road. The jury found for the defendant. *Held,* that the verdict was justified, there being evidence to show a public. way by prescription or dedication before the enactment of St. 1846, c. 203.

On the issue of the existence of an ancient public way leading to a neck of land, United States coast survey charts are admissible to show the existence of a way without regard to the question of whether the way was public or private.

LATHROP, J. This is an action of tort for breaking and entering the plaintiff's close. The answer contained a general denial, and further set up that the close was crossed by a public way, and at the time of the alleged trespass the defendant was on the way in the rightful use thereof.

At the trial in the Superior Court it appeared that the close described in the declaration was Eagle Hill so called, which is a portion of a tract of land of about five hundred acres called Jeffries Neck, or Ipswich Great Neck, situated in the easterly part of the town of Ipswich, bordering on Plum Island River and the sea, and bounded on the north by the Ipswich River and Little Neck. It also appeared that there had been for a long time in Ipswich a road called East Street, which extended from Ipswich in the direction of Jeffries Neck for a distance of about a mile and a half; that this road extended down to the marsh over which is a causeway leading to the upland of Jeffries Neck pasture.

At the close of all the evidence the plaintiff requested the presiding judge to rule that the evidence introduced by the defendant was insufficient in law to prove the establishment of a public way, or to make out a justification for the trespass, and requested the judge to direct a verdict for the plaintiff for nominal damages. The judge refused so to rule, and submitted the case to the jury upon full instructions not objected to. The jury returned a verdict for the defendant; and the case is before us on the plaintiff's exceptions.

The principal exception is to the refusal to give the ruling above referred to. The defendant produced ancient records of the town of Ipswich referring to the "highway" or "way" to Jeffries Neck, which made provision for the repair of the way, establishing a fence and gate in the way, "the charges of it to be laid upon the owners of the cattle that go in the neck." These records bear date from 1635 to 1652.

He also put in evidence certain ancient deeds referring to the "road" and to the "great road leading to Jeffries Neck," also certain ancient plans tending to show the existence of a way, beyond the gate to one or another different points beyond the gate across the causeway, also certain charts of the coast survey the latest of these being made in 1857, indicating a way leading from Ipswich to the southern bank of Green River. These were identified by a witness as the way in question and as terminating at Eagle Hill landing.

The defendant also introduced the testimony of old men tending to show a well defined and well travelled way from Ipswich to Jeffries Neck over the premises described in the declaration, at least to the upland inside the gate, and a more or less defined way from this point to the landing; that this road was by reputation an ancient road, and was used by the inhabitants of the town engaged in the clamming industry at Eagle Hill landing, and by the inhabitants of Plum Island; and that cattle had been pastured within the gate from time immemorial; that the place where the cattle were pastured was surrounded by water, except where the causeway crossed a certain creek, where from time immemorial a gate had been maintained during the pasturage season, and removed at other times.

The defendant also put in evidence of user of the road from time immemorial by many persons under a claim of right, and of repairs made by them and by the surveyor of the district.

The plaintiff, who claimed title through the proprietors of Jeffries Neck, put in evidence the records of said proprietors, dating from 1751, which tended to show ownership of the way in question, and of non-acquiescence in any adverse user of the way, as well as steps taken to prevent trespassing.

Strictly speaking, the only question before us is as to the defendant's evidence, as the plaintiff did not ask for a ruling on all the evidence. We are of opinion that on the defendant's evidence it was a question of fact for the jury under proper instructions, whether the way was a public way; and certainly it was a question for the jury on all the evidence.

The ancient records put in evidence by the defendant show that there was at that time a way or highway leading to Jeffries Neck. The word "highway" in a popular sense includes all public travelled ways, whether county or town ways. *Jones* v. *Andover*, 6 Pick. 59. *Commonwealth* v. *Hubbard*, 24 Pick. 98. So, of the word "road." *Stedman* v. *Southbridge*, 17 Pick. 162, 164.

The records also showed that the gate across the causeway was put up to keep the cattle in; and the jury might well draw the inference that from time immemorial it had been used for that purpose only.

The fact that there was no evidence of a public lay out of this way is not conclusive. Before the statute of 1846, c. 203, a way might become a public way by dedication or prescription, and the statute does not apply to ways of the latter class. *Commonwealth* v. *Coupe*, 128 Mass. 63, and cases cited. *White* v. *Foxborough*, 151 Mass. 28, 44. We can have no doubt that the evidence in this case was sufficient to show a public way by prescription or by dedication before the St. of 1846.

There was also much evidence to show that the way in controversy was identical with the ancient road.

The cases principally relied on by the plaintiff are cases where the ways were private in their inception and there was no evidence of dedication or of acts adverse to and acquiesced in by the owner. *Durgin* v. *Lowell*, 3 Allen, 398. *Sprow* v. *Boston & Albany Railroad*, 163 Mass. 330. In the present case,

the acts of user were grounded upon evidence that the way was a public way in ancient times.

The case of *Slater* v. *Gunn*, 170 Mass. 509, upon which the plaintiff also relies, came to this court on exceptions to a master's report, which had been overruled by a judge of the Superior Court. The master stated that he did not find that the travel had been of a nature, or an extent, or under a claim of right, which would give the public an easement by prescription over the way as a public way. This was regarded as in effect a finding that the public had not acquired a right of way. It is said by the court: "There was nothing in the nature of the use described which, as matter of law, required the master to find that it was adverse and under a claim of right, or that the roadway had become a public way by dedication." The evidence did not come before this court, and the questions arose simply on the master's report which was in favor of the plaintiff. The only question was whether the master was bound, as matter of law, to find otherwise than he did.

In the present case the tribunal of fact having found for the defendant, the only question is whether there was anything to go to the jury. There are also other differences in the evidence which distinguish the two cases.

There are several other exceptions which remain to be considered.

The plaintiff at the argument contended that certain deeds put in evidence were not ancient deeds, and clearly they were not. They were introduced in connection with ancient deeds, and apparently for the purpose of identifying the land as part of the same conveyed by the ancient deeds. Whatever was the purpose of their introduction, there is nothing in the bill of exceptions to show that any objection or exception was taken to their admission.

The plaintiff excepted to the admission of the coast survey charts before mentioned. No ground of objection to their admission was made at the trial. On the plaintiff's brief the objection is made that they had no tendency to prove a public way, and because the surveyor who drew the plans was not endeavoring to determine what were public or private ways, and had no authority to do so.

We have no doubt that these charts were admissible to show the existence of a way on Jeffries Neck, and if the plaintiff wished to limit their use in evidence he should have asked for an instruction to this effect. There is nothing in the bill of exceptions to show that they were admitted for the purpose of enabling the jury to decide whether the way was public or private.

The U. S. St. of February 10, 1807, § 1, authorizes the President of the United States " to cause a survey to be taken of the coasts of the United States, in which shall be designated the islands and shoals, with the roads or places of anchorage, within twenty leagues of any part of the shores of the United States; and also the respective courses and distances between the principal capes, or headlands, together with such other matters as he may deem proper for completing an accurate ·chart of every part of the coasts within the extent aforesaid." 2 U. S. Sts. at Large, 413. See also U. S. Rev. Sts. § 4681.

It is an essential part of a coast survey chart that it should show a strip of the coast, with more or less of the natural and artificial features delineated upon it as to render it serviceable. It would be of no value if the coast line were not shown. These charts were official acts of the government of the United States, to say nothing of their being ancient charts. See *Whitman* v. *Shaw*, 166 Mass. 451, and cases cited.

The plaintiff contended that the road over the marsh and across the locus was opened by the commoners of Ipswich for their own convenience, and offered the records of the commoners to show the transfer of the title of Jeffries Neck from the commoners to the Proprietors of Jeffries Neck pasture in 1708–9. Upon the offer of the records the presiding ·judge asked the defendant's counsel, " Is there any question that the former ownership of the land bordering upon this way was in the commoners?" The counsel said, "No." The judge then said to the plaintiff's counsel, " Any record that you have in reference to this way, you may put in. I exclude the rest." The plaintiff excepted. He now contends that the records tend to show that the ancient records of Ipswich put in by the defendant were in part records of the commoners, and that the causeway and the road inside the gate were opened by the commoners for

their own use.  But the excluded records were offered merely to show a transfer of title, and there was no question about the title.  The evidence was properly excluded under the offer of proof made.  See *Holt* v. *Sargent*, 15 Gray, 97.

Some other exceptions were taken by the plaintiff, but, as they were not argued, we treat them as waived.

*Exceptions overruled.*

*C. A. Sayward, (H. P. Moulton* with him,) for the plaintiff.
*A. P. White, (G. H. W. Hayes* with him,) for the defendant.