ARTHUR McCARTHY'S ADMR. *v.* VILLAGE OF NORTHFIELD.

February Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 15, 1915.

*Evidence—Expert Testimony—The Knowledge of Another— Harmless Error—Declarations Against Interest—Scope of Cross-Examination—Presumptions on Review as to Use of Evidence—Sufficiency of Exception to Admission of Evidence.*

One cannot testify as a fact that another has a designated knowledge, understanding, or other mental state, for such testimony is a mere inference by the witness.

Opinion evidence is only received as an administrative necessity, and so, unless the necessity for receiving a witness's opinion as to another's mental state is made to appear, that opinion should be rejected.

In an action for the death of plaintiff's intestate while employed in using switches in defendant's electric lighting station, owing to alleged insufficient insulation of the switch handles, testimony of defendant's witness, who qualified as an expert electrician, that the intestate knew that the secondary side of the transformers was a 2250 volt system, and that the primary side was of a higher voltage, was not within the realm of proper expert testimony and should have been excluded, where there was nothing to show that it required any technical knowledge to judge accurately of what intestate, in the circumstances disclosed, must have known about the voltage; but as witness detailed the facts on which he based

his conclusion, and they were such as to compel it, the error was harmless.

In an action ·for the death of plaintiff's intestate while employed in using switches in defendant's electric lighting station, owing to the alleged insufficient insulation of the switch handles, where defendant's witness testified in direct examination that, in his opinion, the station and the apparatus therein were safe, if used with reasonable care, and in cross-examination admitted that he belonged to the National Electric Lighting Association, which had standard and good rules for installing electric apparatus, it was not error to exclude further cross-examination as to whether that association had taken any position as to the safety of a method of wiring by which the blades of switches would be alive when down, where no evidence was offered tending to show that the association had taken any position on that matter.

In an action for the death of plaintiff's son and intestate while employed in using switches in defendant's electric lighting station, owing to alleged insufficient insulation of the switch handles, where testimony that plaintiff, while at the lighting station shortly after the accident, had said that no one was to blame except the intestate, and that intestate had warned plaintiff several times when plaintiff was turning on the lights not to get his hands in contact with the switch blades, was admitted, under plaintiff's exception, "for all legitimate purposes," after plaintiff had said that he did not object to the testimony as impeaching evidence, he having denied making the statement, but objected that it was not admissible to prove the recited facts, and the court was not, by requested instructions, or otherwise, asked to limit the testimony, and did not do so in its charge, and plaintiff did not except to the charge, nor to the failure of the court to limit the testimony, and it does not appear what use was made of the testimony in argument, it will be presumed on review that the only use made of it was legitimate, and, as the exception taken reserved only the question of the admissibility of the evidence, error does not appear.

In such an action, to reserve the question whether evidence of an admission by one or more next of kin, admitted subject to plaintiff's exception, but conceded to be admissible as impeaching evidence, could properly be received on the question of liability, plaintiff might have to request an instruction limiting the use of the evidence; but certainly nothing short of an exception to the court's failure to restrict it can reserve that question.

CASE for negligence.  Plea, the general issue.  Trial by jury at the September Term, 1914, Washington County, *Miles, J.,* presiding.    Verdict and judgment for the defendant.    The plaintiff excepted.  The opinion states the case.

*H. C. Shurtleff* for the plaintiff.

The rule that the declarations of a party to a suit are admissible to prove the stated facts does not apply to one suing in a representative capacity.  *Wheelock* v. *Wheelock,* 5 Vt. 438; *Sargent* v. *Sargent et al.,* 18 Vt. 376; *Dent.* v. *Dent.,* 3 Gill. 484; *Church* v. *Howard,* 79 N. Y. 419; *Crandall* v. *Gallup,* 12 Conn. 372, 2 Wigmore on Ev. §1076; *Williams* v. *Culver,* 39 Ore. 340; *Hadlock* v. *Brooks,* 178 Mass. 436; *Mangan* v. *Webster et al.,* 7 Gill. 81; *U. S. Life Ins. Co.* v. *Kielgast,* 26 Ill. App. 571; *U. S. Life Ins. Co.* v. *Vocke,* 129 Ill. 557; *Prudential Insurance Co.* v. *Fredericks,* 41 Ill. App. 422; *Gooding* v. *U. S. Life Ins. Co.,* 46 Ill. App. 308.  Nor have the codistributees, legatees, or devisees such joint interest as will make the admissions of one evidence against the others.  *Dale's Appeal,* 57 Conn. 127; *Re Kennedy Will,* 167 N. Y. 177; *Livingston's Appeal,* 63 Conn. 76; *Shailer* v. *Bumstead et al.,* 99 Mass. 127; *Hayes* v. *Burkam,* 67 Ind. 367.

*Fred E. Gleason* and *George B. Young* for the defendant.

TAYLOR, J.  This case was first here on demurrer to the declaration.  87 Vt. 191.  Since the remand there has been a trial by jury with verdict and judgment for defendant.  The case is now in this Court on plaintiff's exceptions to the admission and rejection of evidence.

The plaintiff as administrator of his son, Arthur McCarthy brings this suit for the benefit of himself and his wife as next of kin to recover damages for the death of the intestate.  The defendant, under charter authority, operates an electric light plant for the purpose of lighting its streets and of furnishing electricity for power and lighting private buildings.  At the time in question the defendant procured electric current from the firm of Moody and Almon.  The current was delivered to defendant outside a building, called a sub-station, in which was maintained switchboards and other apparatus for transforming and transmitting said current.  The current was delivered at a

high voltage and was transformed in apparatus outside the building to a voltage of 2300 for street lighting purposes. From this transformer the current was conducted into the building and thence through cut-outs and switches out of the building to the street lighting circuit. The switches employed were of the type known as "jack-knife switches" and were used to control the street lights, turning them off or on by opening or closing the switches.

The plaintiff's intestate was employed by the defendant in the operation of its electric plant and among his duties was that of turning the street lights on or off by means of the switches. The accident which caused intestate's death occurred on the evening of July 21, 1908, when he was alone at the sub-station. When last seen alive he was on his way to turn on the street lights. Soon after his lifeless body was found on the floor in front of the switchboard. Burns on his hands indicated that he had been electrocuted. The evidence as to how the accident occurred was wholly circumstantial. Plaintiff's evidence tended to show that the installation of the switches was faulty and that the accident was occasioned through insufficient insulation of the handles of the switches, which were among the grounds of negligence complained of. The defendant's evidence was to the contrary and tended to show that the accident was occasioned by the intestate's hands coming in contact with the blades of the switches through carelessness in operating them. The switches were so installed that the blades to which the handles were attached were at all times charged with a current of 2300 volts. The switches being alive when open, a person taking hold of both handles of a pair of switches would receive the current through his body, if the insulation of the handles proved insufficient, or if his hands chanced to touch the blades.

The questions for review are such that it is unnecessary to state further the claims of the parties and the tendency of their evidence.

1. One of the material questions at the trial was intestate's knowledge of the voltage of the current at the switches in question. The defendant called as a witness one Almon who qualified as an expert electrician. After testifying that he was familiar with the electric station in question, that he knew the deceased, that deceased had worked for him and had installed transformers on witness's power lines in Northfield, that he had

seen deceased work an electrical apparatus, and that he had some knowledge of things the intestate knew concerning the current there, witness was asked: "Will you tell us what you know of his knowledge of the currents on those wires about that plant?" Against the objection that the question was too broad—that it permitted witness to draw conclusions—witness answered under exception: "I know that Arthur (the intestate) knew that the secondary side of our transformers was a 2250 volt system, and that the primary side of our transformers was of a higher voltage." In answer to how he knew that, witness stated that he had known of intestate's installing transformers, and transformers are connected for 1150 volts or 2250 volts; that when the transformers are shipped from the factory they are labelled to be connected up either way, and in order to install them on the system in Northfield it was necessary to see that they were connected up to the 2300 side of the transformer. He further testified that a transformer is marked to tell what the voltage is for which it is connected up and that in making the connection one has to read the voltage. After witness had given these reasons plaintiff moved to strike out the answer relating to what witness knew of intestate's knowledge. The motion was overruled and plaintiff excepted. The two exceptions can be considered together.

The testimony challenged by these exceptions was clearly nothing more than the opinion of the witness. One cannot testify, as a fact, to the existence of knowledge, understanding or other mental state of another; nor as to what has entered into the other's consciousness by means of his senses. From very nature such testimony is the result of reasoning. 17 Cyc. 152; *Union Pacific R. Co.* v. *O'Brien,* 161 U. S. 451, 40 L. ed. 466, 16 Sup. Ct. 618; *Worden* v. *Gove-Meehan Co.,* 83 Conn. 642, 78 Atl. 422; *White Automobile Co.* v. *Dorsey,* (Md.) 86 Atl. 617, 622. Such evidence is ordinarily inadmissible; and the objection should have been sustained, unless the testimony comes within an exception to the general rule. Opinion evidence is only received as an administrative necessity. Unless the necessity for receiving the opinion of a witness as to the existence of another's mental state is made to appear, such opinion should be rejected. 3 Cham. Mod. Law of Ev. §1939. The fact that the witness was testifying as an expert does not affect the question, as the inquiry did not relate to a matter within the realm of proper expert

testimony.    There is nothing in the case to show that it required any technical knowledge to judge accurately of what the intestate must have known, in the circumstances disclosed, concerning the voltage at the switches.    It was said in *Consolidated Gas &c. Co.* v. *State,* 109 Md. 186, 72 Atl. 651: "It is carrying the theory of expert testimony too far to hold that they (expert witnesses) may express an opinion upon every issue arising in a case involving the technical knowledge and experience of a party to the cause."    If the facts can be detailed and placed before the jury so that the jurors as men of ordinary intelligence can fully understand the matter and draw the proper inferences and conclusions, and there is no necessity for opinion evidence, such evidence, whether the opinion of an expert or non-expert, is inadmissible.    1 Elliott on Ev. §672.    *Royce,* J., in *Clifford* v. *Richardson,* 18 Vt. 626, says: "The general rule certainly is that witnesses are to testify to facts and not to their individual opinions.    This rule, however, has its exceptions, some of which are as familiar and as well settled as the rule itself.    When all the pertinent facts can be sufficiently detailed and described and when the triers are supposed to be able to form correct conclusions without the aid of opinions or judgment from others, no exception to the rule is allowed."    See also *Fraser* v. *Tupper,* 29 Vt. 409 and comprehensive note to this case in second edition, Vermont Reports; *Fulsome* v. *Concord,* 46 Vt. 140.

The opinion here under consideration does not come within either of the exceptions making such evidence admissible.    It is not admissible as expert testimony, and it does not appear that the pertinent facts could not be detailed and described with sufficient clearness to enable the jury to form a correct conclusion without the aid of the witness's opinion.    That being so the opinion should have been excluded.

It does not necessarily follow that it was reversible error to overrule the plaintiff's objections.    The facts on which the opinion was based were detailed to the jury.    If the witness's conclusion is fairly obvious from the facts detailed, and so they necessarily lead to that conclusion, the error would be harmless. 3 Cham. Mod. Law of Ev. §§2291. 2301, 2353 and 2353a; *Brown* v. *Swanton,* 69 Vt. 53, 58, 37 Atl. 280; *Fowlie's Admx.* v. *McDonald, Cutler & Co.,* 82 Vt. 238, 72 Atl. 989; *Samson* v. *Hughes,* 147 Cal. 62, 81 Pa. 292; *Central Ry. Co.* v. *Allmon,* 147 Ill. 471,

35 N. E. 725; *Mead* v. *Altgeld,* 136 Ill. 298, 26 N. E. 388; *La Rue* v. *Smith,* 153 N. Y. 428, 47 N. E. 796; *McGarrity* v. *N. Y. N. H. & H. R. Co.,* 25 R. I. 269, 55 Atl. 718.

Witness testified in this connection that plaintiff's intestate had installed transformers on the electric lines in Northfield; that the transformers are connected for 1150 and 2250 volts; that they are labelled to be connected up either way and are marked to tell what the voltage is; that in making the connection one has to read the voltage; that in order to install transformers on the system in Northfield it was necessary to see that they were connected up to the 2300 side. These facts were undisputed. The only rational inference to be drawn therefrom is that the intestate knew that the plant on which he was working was a 2300 volt system on the secondary side. That was the only material fact covered by witness's opinion. His opinion being the necessary inference to be drawn from the facts detailed added nothing to the force of his testimony. We see no reason to believe that the jury was misled by the opinion and so hold that the error was harmless.

2.   Witness Almon testified in direct examination that the sub-station and apparatus therein was, in his opinion, perfectly safe if used with reasonable care. In cross-examination he admitted that he belonged to the National Electric Lighting Association and that the Association had standard rules for installing electric apparatus, which the witness recognized as good rules. He was then asked: "What is the position of this National Electric Lighting Association, to which you belong, upon wiring so that the blades of the switches will be alive, when down? Do they commend it or prohibit it?" The question was excluded to which the plaintiff excepted.

This subject was not touched in direct examination. Plaintiff argues that, if the witness had answered that the Association prohibited this kind of wiring, it would have tended to discredit his direct testimony. Admitting that that would be so, plaintiff's claim rests upon an assumption that is outside the record. No evidence was offered tending to show that the Association had taken any position on that matter, and plaintiff's counsel said in oral argument before us that he did not know what the rules of the Association provided. It is enough to say that error cannot be predicated on such a state of facts. So far as appears the answer may have been that the Association approved, or

that there was no rule relating to that matter.. Without an offer of some kind the exception is without foundation. We do not consider whether the question was improper because the witness was asked to construe the rule, if there was one, as, in the circumstances, the exception is unavailing. If in fact there had been a written rule touching this matter, it is evident there would be some merit in the claim. We held in *White's Admx.* v. *C. V. Railway Co.*, 87 Vt. 345, 89 Atl. 618, that the construction of a railroad rule was for the court and that a question calling for an interpretation of the rule by an expert was properly excluded.

3. Defendant improved one Fuller as a witness who testified to being at the electric light station shortly after the accident and that while there he heard the plaintiff make a statement concerning the accident. Subject to objection and exception witness was permitted to testify: "He (plaintiff) said there was nobody to blame about the accident except Arthur (the intestate); says he, 'He has warned me several times when I was turning on the lights to be careful and not get my hands onto the metal.'" The plaintiff had denied making the statement. Plaintiff did not object to the testimony as impeaching evidence, said he was willing it should be received on that ground, but objected that it was not admissible to prove the facts stated. The court admitted the testimony "for all legitimate purposes."

The court was not asked to limit the testimony in the charge to the jury and did not refer specifically to this evidence. The case shows that the court referred generally to evidence of declarations made out of court and that the jury was cautioned as to the infirmities of such evidence. It fairly appears that the court did not then instruct the jury as to the use to be made of such evidence. Plaintiff did not except to the charge, nor to the failure of the court to limit the testimony under consideration to impeachment, nor to the failure of the court to instruct as to the use to be made of impeaching evidence. It nowhere appears what use was made of the evidence in argument. In the absence of a showing to the contrary it will be presumed that the use made of it was legitimate. It is fair to assume that plaintiff would have objected to any use which he deemed unwarranted and, in case his objection was overruled, would have saved an exception.

The exception taken saved only the question of the admissibility of the evidence. No question being made but that it was

proper as impeaching testimony, the court did not err in admitting it; and there being no exception to the use subsequently made of it nor to the court's failure to restrict its use, there is no question before us for review.   To make his claim available that the testimony of an admission by one of two or more next of kin in an action such as this could not properly be received on the question of liability, the plaintiff might have to request an instruction limiting the use of the testimony.    Certainly nothing short of an exception to the court's failure to restrict it would avail in the circumstances of this case.   *Brewin* v. *Farrell's Est.*, 39 Vt. 206, 211; *Trenton Ry. Co.* v. *Cooper*, 60 N. J. L. 219, 37 Atl. 730, 38 L. R. A. 637, 64 Am. St. Rep. 592; *McLaughlin* v. *Joy*, 100 Me. 517, 62 Atl. 348; *Lord* v. *Manchester St. Ry. Co.*, 74 N. H. 295, 67 Atl. 639; *Stallins* v. *So. Ry. Co.*, (Ga.) 78 S. E. 421; *Ill. Steel Co.* v. *Paczocha*, (Wis.) 119 N. W. 550; *Clark* v. *Hull*, 184 Mass. 164, 68 N. E. 60; *Bird* v. *Bird*, 218 Ill. 158, 75 N. E. 760.   Mere failure to give the instruction would not reach back and affect the admissibility of the evidence.

Error does not appear.

*Judgment affirmed.*