[Sac. No. 1221. In Bank.—September 20, 1906.]

ELIZABETH M. SNEED, Administratrix of Estate of James L. Sneed, Deceased, Respondent, v. MARYSVILLE GAS AND ELECTRIC COMPANY, Appellant.

ACTION FOR DEATH—NEGLIGENCE OF EMPLOYER—POSITION OF DANGER— FAILURE OF WARNING—KNOWLEDGE OF SERVANT—ERROR IN EVIDENCE.—In an action for death of a servant for alleged negligence of his employer in putting him in a position of danger without warning him of the danger, he being in ignorance thereof, it became material and important under the issues to ascertain whether the deceased had knowledge of the danger, and it was prejudicial error to permit the mother of deceased to give incompetent testimony that he had no knowledge of the danger, and in refusing to strike out such testimony, where it appeared on cross-examination that the mother had no means of knowing the knowledge of her son, and where there was other testimony that he had knowledge of the danger and was informed thereof, and the verdict was for the plaintiff.

ID.—MODE OF PROOF OF KNOWLEDGE OR IGNORANCE.—The proper proof of the knowledge or ignorance by the deceased was not by direct evidence thereof, but by proof of his declarations or of circumstances from which it can be inferred, as that he was or was not informed, or that he was in a position in which he could or could not see, and such like conditions.

ID.—SUFFICIENCY OF OBJECTION.—The technical objection by respondent that the record shows that the objection of appellant to the mother's testimony was too late, having been made after the mother had answered, will not be entertained where the answer was very brief, and the court, in making its ruling upon the merits of the objection, did not consider the point that the objection was not timely, but held that appellant's attorney could ascertain the fact on cross-examination. The objection that it had not been shown that the witness knew of the knowledge possessed by the deceased, was in substance an objection that the evidence was incompetent.

ID.—MEASURE OF DAMAGES FOR DEATH.—Under our statute the measure of damages for an injury causing death is limited to the pecuniary loss suffered by the heir of the person killed by reason of his death, which may be a loss arising from the deprivation of something to which the heirs would have been legally entitled, if the deceased had lived, or a loss arising from a deprivation of benefits, which from all the circumstances of the case it could be reasonably expected such heirs would have received from the deceased had his life not been taken, although the obligation resting on

him to bestow such benefits on them may have been a moral obligation only.

APPEAL from a judgment of the Superior Court of Yuba County and from an order denying a new trial. K. S. Mahon, Judge, presiding.

The facts are stated in the opinion of the court.

Garret W. McEnerney, William B. Bosley, Forbes & Dinsmore, and F. P. Deering, for Appellant.

W. H. Carlin, for Respondent.

SHAW, J.—This is an action to recover damages for the death of the deceased, James L. Sneed, alleged to have been caused by the negligence of the defendant. Plaintiff recovered judgment, defendant moved for a new trial, and its motion was denied. The defendant appealed from the judgment, and also from the order denying its motion for a new trial. The action was begun by James A. Sneed, the father of the deceased, as the administrator of the estate. After judgment, James A. Sneed died, and the present plaintiff was substituted in his place, as administratrix and as plaintiff.

The deceased at the time of his death was in the service of the defendant in the capacity of a plumber or plumber's assistant, and was engaged in the work of joining two pieces of pipe at the top of a watertank-house owned by defendant. At an elevation of about five feet higher than the platform on which he was at work there were eight wires stretched, each carrying a high potential electric current of sixteen thousand volts, the wires and electric current being owned, controlled, and managed by the defendant. The nearest of these wires was about five inches away from a vertical line extended upward from the edge of the tank-house platform, so that if the deceased attempted to stand erect with his head projecting over the edge of the platform he would inevitably come in contact with or near to this wire. His death was caused by the electric current from this wire entering his head as he made the attempt to stand erect, while at the same time having his head bent over forward looking down at a fellow-workman on the ground below.

CXLIX Cal.—45

The particular charge of negligence against the defendant was that the place, as above described, where deceased was at work was, by reason of the proximity of the wires and the powerful electric current carried by them, a place of danger, that the deceased did not know the nature or properties of electricity, nor the dangers incident to coming in close proximity to the said wires carrying said electric current, that defendant, with full knowledge of the dangers arising from the proximity of said wires and electric current to said platform, and of the ignorance of the deceased concerning the same, put him to work thereon, without instructing him or warning him of the said dangers. Under the issues it became material and important to ascertain on the trial whether or not the deceased, prior to his death, had any knowledge of electricity and the dangers arising from its use on the said wires. Evidence was given on this issue by both parties, and the jury specially found that the deceased did not have such knowledge. It is earnestly claimed by the defendant that the competent evidence is not sufficient to sustain this finding. There was evidence tending to show, and defendant insists that it was sufficient to prove, that he did possess that knowledge. It is necessary to mention this only for the purpose of demonstrating the importance of excluding from the jury any incompetent evidence on the subject, and to show that injury was likely to be caused by the admission of improper evidence tending to prove such lack of knowledge.

The present plaintiff, the mother of the deceased, was a witness for the plaintiff. She testified that at the time of his death the deceased was twenty-two years of age, and had lived with her all his life, that he had been working out for himself ever since he was nineteen, and was working for defendant in its gas department on September 17, 1901, the day of his death. Thereupon the following question and answer was asked and given in her examination in chief: "Q. Did he, up to that time, have any knowledge of electricity or its dangers?—A. He had no knowledge." Objection was made to this on the ground that it had not been shown that the witness knew anything about the knowledge of the deceased regarding electricity or its dangers. The court overruled the objection, remarking to defendant's counsel, "You can find out on cross-examination." On cross-examination on the sub-

ject she testified that he had for three or four months before
his death worked for defendant as a plumber, and had pre-
viously worked in the same occupation at the woolen mills;
that she had been at the woolen mills and had seen him work-
ing there six or seven times, about half an hour each time;
that she did not think they had any electric motors or wires
at the woolen mills; that she did not know that he had run
a motor there, and did not think he did; that he did not learn
of electricity or its dangers either in his work at the woolen
mills or in his work for the defendant; that she knew he knew
nothing about it, and that the only reason she had for saying
this was that he always told her everything he was doing any-
where, and that if he had learned of electricity and its dan-
gers he would have told her something of it, and that he had
not told her anything about it.   Thereupon the defendant
moved the court to strike out the testimony of the witness as
to the lack of knowledge of deceased, on the ground that it
was hearsay, and the motion was denied.

In these rulings we think the court erred.   There was evi-
dence on behalf of the defendant to the effect that electric
motors were installed and used in the woolen mills while Mr.
Sneed was working there, and that he was there instructed how
to run the motor and informed of the danger from contact with
wires carrying electricity.   While it may be that there is no
evidence that he was ever informed that one might receive
what is called a "brush discharge" from coming in close
proximity to highly charged wires, without actual contact
therewith, there clearly is evidence that he knew the danger
arising from such contact.   The evidence leaves it doubtful
whether the death was caused by a "brush discharge" or by
a discharge from actual contact with the wire.   In view of
this condition of the evidence, the action of the court in
practically informing the jury that they could consider, as
evidence on the question, the positive declaration of the
mother that he had no knowledge of any such danger, would
probably be taken by the jury as highly significant, and if
this declaration was incompetent its admission must be pre-
sumed to have been injurious to the defendant.   That it was
incompetent, under the circumstances shown, is clear.   Ordi-
narily one person cannot know what is in the mind of another,
and direct testimony by a witness that another knows or does

not know a particular fact is, for that reason, in most cases improper. Such knowledge can only be shown by his declarations or inferred from circumstances, and proof of it can only be made by proof of his declarations or of circumstances from which it can be inferred, as that he was or was not informed, or that he was in a position from which he could or could not see, and such like conditions. "A witness can testify of those facts only which he knows of his own knowledge; that is, which are derived from his own perceptions, except in those few express cases in which his opinions or inferences, or the declarations of others are admissible." (Code Civ. Proc., sec. 1845.) This section is inaccurate, so far as it refers to the admission of the declarations of others as an exception. In such case the witness testifies merely to the making of the declaration, which he must have heard in order to be a competent witness to testify to it, and hence, the fact to which he testifies is a fact within his own knowledge, derived from his own perceptions. With respect to opinions and inferences the only exceptions to this general rule at all similar to the case at bar are the opinions of subscribing witnesses to a writing and of intimate acquaintances of a person as to the sanity of such signer or person (Code Civ. Proc., sec. 1870, subd. 10), and those cases where, from the nature of the case and the difficulty of accurately describing in words the facts on which the inference or opinion is based, a witness is allowed to testify directly to the conclusion or inference that another person was, on a particular occasion, angry, calm, agitated, excited, intoxicated, rational, or irrational, and the like. (*Holland* v. *Zollner,* 102 Cal. 638, [36 Pac. 930, 37 Pac. 231]; *People* v. *Manoogian,* 141 Cal. 592, 595, [75 Pac. 171]; *People* v. *Lavelle,* 71 Cal. 351, [12 Pac. 226]; *People* v. *Sanford,* 43 Cal. 29.) We, of course, are not speaking here of expert opinions in matters of science or special knowledge. None of the cases go so far as to hold it competent for a witness to testify directly that another person was or was not possessed of knowledge or learning of or concerning a particular fact. We can see no reason for extending the exceptions to the general rule so far as would be necessary to sustain the admission of the testimony in question. And this is specially true of the denial of the motion to strike out the testimony after the cross-examination, which

the court suggested, had disclosed that the witness had no means of knowing the knowledge possessed by her son, other than his silence on a subject as to which there was no especial reason for him to speak to her.

The respondent makes some technical objections to the consideration in this court of the question of the competency of this evidence. The first one is that the objection to the question came too late, being apparently made after the question was answered. In the bill of exceptions the objection seems to have been made immediately after the answer, and there is nothing to indicate that there was not time to make it sooner, except the fact that the answer is very brief. We think, however, that the conduct of the court in apparently making the ruling on the merits of the objection, instead of on the point that the objection was not timely, and in directing defendant's attorney to ascertain the facts bearing upon the objection on the cross-examination, should be considered as a bar to the point that the objection came too late. The attorney might well have inferred therefrom that the court was ruling on the objection on its merits, waiving the point that it was untimely, and, consequently, may have been led to refrain from claiming that the answer was given before he had time to object. There is nothing to indicate that the court did not so consider the matter, or that counsel for plaintiff was then relying on the point that the objection was too late, or was in any respect misled or injured by the lateness of the objection.

The ground of the objection substantially presented to the court the question of the competency of the evidence sought to be elicited. The testimony of a witness as to the knowledge possessed by another is incompetent evidence, because the witness can have no knowledge of the fact to which he is asked to testify. Hence the objection that it had not been shown that the witness knew of the knowledge possessed by the deceased was, in substance, an objection that the evidence proposed is incompetent. It was merely a specific statement of the particulars which rendered the evidence incompetent.

We do not think it necessary to consider the sufficiency of the evidence to sustain the allegations that the deceased was uninformed of the dangers arising from the use of electricity and its transmission through wires, that defendant was aware

of his ignorance in these particulars, and that it failed to instruct him concerning the same or inform him of the danger incident to the place of his .employment and the proximity thereto of a high potential electric current. The evidence upon another trial may be different, as also may be the verdict.

It is further contended by the appellant that the damages allowed by the jury were excessive, and a considerable part of the argument on both sides is devoted to this subject. Inasmuch as a new trial will be necessary because of the error in the admission of evidence, as heretofore stated, we do not consider it proper to discuss the question of excessive damages. With regard to the measure of damages, in view of the argument made, and of the probability of another trial, it is proper to say that it is definitely settled that under our statute the damages to be recovered for an injury causing death are always limited to the pecuniary loss suffered by the heirs of the person killed, by reason of his death. (*Munro* v. *Dredging Co.,* 84 Cal. 515, [18 Am. St. Rep. 248, 24 Pac. 303] ; *Morgan* v. *Southern Pacific Co.,* 95 Cal. 516, [29 Am. St. Rep. 143, 30 Pac. 603] ; *Pepper* v. *Southern Pacific Co.,* 105 Cal. 401, [38 Pac. 974] ; *Green* v. *Southern Pacific Co.,* 122 Cal. 566, [55 Pac. 577] ; *Wales* v. *Pacific E. M. Co.,* 130 Cal. 523, [62 Pac. 932, 1120] ; *Keast* v. *Santa Ysabel etc. Co.,* 136 Cal. 260, [68 Pac. 771] ; *Dyas* v. *Southern Pacific Co.,* 140 Cal. 308, [73 Pac. 972] ; *Hillebrand* v. *Standard B. Co.,* 139 Cal. 236, [73 Pac. 163].) We think it may be further said that this pecuniary loss may be either a loss arising from the deprivation of something to which such heirs would have been legally entitled if the person had lived, or a loss arising from a deprivation of benefits which, from all the circumstances of the particular case, it could be reasonably expected such heirs would have received from the deceased had his life not been taken, although the obligation resting on him to bestow such benefits on them may have been a moral obligation only. (8 Am. & Eng. Ency. of Law, 2d ed., pp. 922, 939 ; 13 Cyc. of Law & Pro., p. 367 ; *Redfield* v. *Oakland C. S. Ry. Co.,* 110 Cal. 288, [42 Pac. 822] ; 3 Sutherland on Damages, 3d ed., sec. 1272, p. 3736, sec. 1273, p. 3740.)

The judgment and order are reversed, and the cause remanded for a new trial.

McFarland, J., Beatty, C. J., Henshaw, J., and Lorigan, J., concurred.

McLAUGHLIN, J., dissenting.—I dissent.

"All intendments of the law are in favor of the regularity of the judgment. and proceedings in the court below, and it is incumbent upon the appellants to show error affirmatively." (*People* v. *Gibson*, 106 Cal. 458, [39 Pac. 864]; *McLennan* v. *Wilcox*, 126 Cal. 53, [58 Pac. 305]; *People* v. *Allen*, 144 Cal. 300, [77 Pac. 948].) The objection to the question asked Mrs. Sneed was interposed after she had answered, and there is nothing in the record to show that the court was requested to or did consider the objection as having been made at the proper time. True, this may have been the case, but it might with equal plausibility be assumed that the objection was overruled because it was tardily made. Under the rule above quoted the latter rule should be accepted as correct, and this done it certainly cannot be said that the ruling was erroneous. A motion to strike evidence from the record must be based on a timely and sufficient objection to its introduction, and hence there was no error in refusing to eliminate the testimony of Mrs. Sneed.

If, however, it be conceded that the evidence was objectionable and the ruling improper, still I cannot persuade myself the error was prejudicial. A mother may perhaps know that her son had no knowledge of electricity or its dangers, because he has never had an opportunity to acquire such knowledge either by personal observation, reading, or intercourse with persons who could give him information on the subject. If his life has been spent at a place so isolated that she must know of his every act, she would be in a position to say that he had no knowledge of something he had never seen, and could not have heard or read about. The answer of Mrs. Sneed was of a very general character, and upon cross-examination it was demonstrated beyond question that she could not have known, and did not know, anything about her son's knowledge touching this or any other subject. Crediting jurors with the usual measure of intelligence, they certainly could not have been misled by a general statement absolutely unsupported by the reasons she gave for having made it.

NOTE.—Justice Sloss being disqualified, Justice McLaughlin, one of the justices of the district court of appeal for the third appellate district, participates herein *pro tempore*, pursuant to section 4 of article VI of the constitution.