[S. F. No. 5429. In Bank.—January 11, 1911.]

## ANNIE BOND, Appellant, v. UNITED RAILROADS OF SAN FRANCISCO, Respondent.

Action for Death—General and Special Verdicts—Order Denying Motion to Vacate Judgment—Appealable Order.—In an action for death where general and special verdicts were given, a motion of the plaintiff to vacate the judgment and for a judgment upon the general verdict, claimed to be in harmony with the special verdicts, is addressed to an order authorized by section 663 of the Code of Civil Procedure. Whatever may be said of a review upon appeal, if such motion were granted, yet where it was denied, the order denying the same is clearly appealable, as a special order after final judgment, under section 963 of the Code of Civil Procedure.

Id.—Record upon Appeal from Order and Other Rulings upon Motions—Bill of Exceptions—Sufficiency.—Where the record upon appeal contains a bill of exceptions showing the appeal from such order, the motion therefor, and the general and special verdicts; and also set forth other rulings upon motions, including the notices of motion, and all evidence documentary or otherwise germane to the motions, it sufficiently shows that the various motions were submitted for decision upon the evidence detailed therein, and not upon other evidence not included in the bill.

Id.—Rights of Action for Injuries Causing Death Statutory—Statutory and Exclusive Measure of Damages.—Rights of action for injuries causing death do not exist at common law, but are purely statutory. The statutory and exclusive measure of damages in such actions is that embodied in section 337 of the Code of Civil Procedure, which is "such damages as under all the circumstances may be just."

Id.—Action by Mother for Death of Son—Wage Earner—Earning Capacity not Limited to Minority—Common Expectancy of Life.—In an action by a mother for negligent injuries causing the death of her son, who was a wage earner supporting her, her re-

covery is not limited to his earning capacity during his minority, but she is entitled to the present value of the reasonable benefit which she would have received after his majority and during the period of their common expectancy of life.

ID.—RULE LIMITING DAMAGES TO PECUNIARY LOSS—EXTENSION OF LOSS. —In an action by a parent for injury to or for the death of a child, the damages allowed are only those which have been or may be suffered by the parent, without regard to any suffering of the child. In view of the rule limiting the damages in all actions for death under sections 336 and 337 of the Code of Civil Procedure to the pecuniary loss suffered by the person or persons for whose benefit the right of action is given, the pecuniary loss suffered should be extended to include all pecuniary loss of every kind, which the circumstances of the particular case establish with reasonable certainty will be suffered by the beneficiary of the statute in future, because of the death.

ID.—APPLICATION OF STATUTE RULE OF DAMAGES—QUESTION FOR JURY.— In the application of the statute rule prescribing "such damages as under all the circumstances of the case may be just," it is to be left to the jury to say, upon a consideration of the facts, what amount is a just compensation for the financial loss which will probably be directly or proximately caused by the death.

ID.—ERRONEOUS INSTRUCTION LIMITING RECOVERY OF MOTHER TO SON'S MINORITY.—In view of the fact that the son was a strong and robust young man, who was earning good wages with which he helped to support his mother, the court erred in instructing the jury that recovery by the mother was limited to the son's minority. It should have been left to the jury to determine the reasonable probability that the same condition would continue after his majority, and to include in the damages the present value of the benefits he would be reasonably expected to bestow upon her during her expectancy of life.

ID.—RULES AS TO EXCESSIVE VERDICTS.—The court below has power to control or limit verdicts which are in its judgment deemed excessive; but the power of the appellate court over excessive damages exists only when the excess appears as matter of law, or is such as to suggest at first blush passion, prejudice, or corruption on the part of the jury.

ID.—INSUFFICIENT SPECIAL VERDICT FOR PROBABLE EARNING POWER— PRESENT VALUE NOT INDICATED.—A special verdict for a sum representing the probable earning power of the son during the life of the mother, cannot afford the basis for recovery, where there is no estimate or basis of calculation, nor any means of determining the present value of such earning power.

ID.—LOSS OF SOCIETY, COMFORT, PROTECTION, OR SERVICES—PLEADING— EVIDENCE—RECOVERY UNDER GENERAL DAMAGES.—It was not necessary that the complaint should specifically allege the loss of society, comfort, protection, or services; but evidence could be given of the

facts relating thereto and allowance could be made thereon under the general allegation of damages.

ID.—RIGHT OF JUDGMENT UPON GENERAL VERDICT.—In the absence of a motion for a new trial, the court should have granted the motion of plaintiff for judgment upon the general verdict, where it did not assume of its own motion to grant a new trial for excess in the allowance made by the general verdict. It must be presumed under the instructions that the general verdict represented the pecuniary loss of the mother from deprivation of the society, comfort, and protection of her son during her expectancy of life.

ID.—REVERSAL—RIGHT OF INTEREST ON VERDICT.—Where the judgment is reversed with directions to the court to render judgment for the plaintiff for the amount of the general verdict, without prejudice to any motion or right of motion for a new trial, the lower court should include in the judgment finally entered interest that had accrued between the date of the return of the verdict and the entry of the judgment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a motion to vacate and set aside the judgment and to enter judgment upon the general verdict. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan, and Theo. J. Roche, for Appellant.

A. A. Moore, Stanley Moore, Wm. M. Cannon, and W. H. Orrick, for Respondent.

SHAW, J.—This is an action by the plaintiff. as a parent. to recover damages for the death of her son, Gustave Fritz, alleged to have been caused by the negligence of the defendant. His father died before the injury occurred. The jury returned a general verdict in favor of the plaintiff for the sum of forty-five hundred dollars. Answers were also made and returned by the jury to certain particular questions of fact. The defendant moved the court, upon certain of these answers, to render judgment for the plaintiff for the sum of four hundred and five dollars and no more. The plaintiff moved the court, upon all the answers, to render judgment for plaintiff for the sum of sixty-nine hundred dollars. The motion of plaintiff was denied and that of the defendant granted. Judgment was

entered accordingly for four hundred and five dollars in favor of the plaintiff. Thereafter plaintiff moved the court to vacate the judgment so entered, and to render judgment in her favor for sixty-nine hundred dollars, or, failing that, then for the sum of forty-five hundred dollars given by the general verdict. The motion was based on the answers aforesaid and upon the instructions of the court to the jury upon the subject of damages. This motion was denied by the court. The plaintiff appeals from the judgment, as rendered, and also from the order after judgment denying the last mentioned motion.

Before discussing the merits of the appeals, it is proper to dispose of some preliminary objections of the respondent. The order made after judgment, denying the motion to vacate the judgment and render a judgment consistent, as plaintiff claimed, with the answers of the jury to the questions put to it, is clearly an appealable order. By section 963 of the Code of Civil Procedure, an appeal may be taken from any special order made after final judgment. This order is one of that kind. It is an order authorized by section 663 of the Code of Civil Procedure. Section 663a of the Code of Civil Procedure declares that an order *"granting* such motion may be reviewed on appeal in the same manner as orders made on motions for a new trial." This was intended either to authorize a review of such an order on appeal from the judgment afterward made in pursuance of it, or to authorize a direct appeal from the order itself. In either case it should not be construed so as to affect the right given by section 963 to appeal from an order *denying* the motion, as from an order made after judgment. Respondent's position in that behalf is untenable.

The record contains a bill of exceptions, intended to show the matters upon which the court acted in ruling upon the several motions involved in these appeals. Respondent contends that this bill does not show that the evidence set forth therein constituted *all* the evidence before the court for its consideration in determining the motions, or either of them. As to the motions made before judgment, the bill recites that, upon the hearing thereof, certain instructions, set forth in full, the general verdict, the special issues determined by the jury, the notices of motion and the pleadings were introduced in evidence and considered by the court, and that "said motions were thereupon submitted to the court for consideration and

CLIX Cal.—18

decision." The documents above referred to were all properly exhibited in the bill, except the·pleadings, which were incorporated by reference to the judgment-roll. ·This, we take it, is a sufficient declaration that the motions were submitted for decision upon the evidence above detailed, and not upon other evidence not included in the bill. It shows in effect, though not expressly, that it contains all the evidence taken by the court upon the hearing. The recital concerning the motion made after judgment is substantially similar in all respects to those above mentioned. The claims of the respondent on these points are not well founded. We will now consider the merits of the appeals.

The jury returned answers to twelve questions put at the request of the defendant and two questions requested by the plaintiff. The only questions here important are the eleventh and twelfth questions requested by defendant and the two requested by plaintiff. They are as follows:—

"11. What would have been the probable earnings of Gustave Fritz from the time of his death to the time of his majority?

"Answer. $765.

"12. What would have been the probable expenses of Gustave Fritz from the time of his death up to the time of his majority?

"Answer. $360.

"1. Did plaintiff, Annie Bond, have a reasonable expectation of receiving from Gustave Fritz, after he had attained his majority and during her expectation of life, contributions to her necessities and wants?

"Answer. Yes.

"2. If your answer to the last interrogatory is 'yes,' what amount would plaintiff, Annie Bond, have a reasonable expectation of receiving from Gustav Fritz, after he had attained his majority and during her expectation of life?

"Answer. $2,400."

The court had instructed the jury, in substance, as we construe the charge on the subject of damages, that the plaintiff could recover actual pecuniary loss caused by deprivation of the society, comfort, and protection of her son before and after his majority, but that on account of his earnings she could recover only his probable net earnings, if he had lived, from

the date of his death to the time of his majority. Apparently
the court was of a different opinion when it ruled upon the
motions. Notwithstanding the general verdict for forty-five
hundred dollars, it sustained the defendant's motion, allowed
nothing for deprivation of either society, comfort, protection
or earnings after majority, assumed that "probable earnings"
during minority included the benefits of society, comfort, and
protection, and gave judgment for only four hundred and
five dollars, which was the difference between the total prob-
able earnings during the remainder of his minority and his
probable expenses for that period.

The plaintiff contends that, inasmuch as the court instructed
the jury that they could allow as damages the pecuniary loss
from deprivation of his society, comfort, and protection after,
as well as during, his minority, but limited them to his minority
as to earnings, it is to be presumed that the excess of the gen-
eral verdict above the four hundred and five dollars of net
earnings was allowed for loss of society, comfort, and pro-
tection and that the judgment should have been for at least
the sum of forty-five hundred dollars given by the general
verdict. She also contends that that verdict must stand, even
if damages for loss of society, comfort, and protection is
limited to the period of minority, because, if so, the jury is
presumed to have allowed on that account the excess over
four hundred and five dollars, to wit, $4,095, and, except upon
motion by the defendant for a new trial on the ground of ex-
cessive damages, or lack of evidence, the verdict is conclusive
on that subject, and no such motion was interposed. She also
makes the broader claim that, in an action of this character,
the parent has a right to recover, as damages occasioned by
the death of the child, not only such pecuniary losses as may
accrue for the period of its minority, but also those which
would probably be suffered after its majority, including pecu-
niary losses resulting from deprivation of its society, comfort,
and protection and also from deprivation of such of its services
and earnings, after majority, as the parent would have a rea-
sonable expectation of receiving from such child, if it had
lived, during the parent's expectancy of life. It is this broad
question to which the respective counsel have devoted the main
part of their several arguments.

At common law, no action would lie for an injury causing

death. Rights of action by, or for the benefit of, parents, children, or heirs of the person killed, for the damage caused to them by his death, exist solely because of statutes and are limited by the statutory provisions which create or confer them. The present action is founded upon the provisions of sections 376 and 377 of the Code of Civil Procedure, which are as follows:—

"Sec. 376. A father, or in case of his death or desertion of his family, the mother, may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another. Such action may be maintained against the person causing the injury, or death, or if such person be employed by another person who is responsible for his conduct, also against such other person."

"Sec. 377. When the death of a person not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case, may be just."

The rights of action being wholly statutory, the statutory rule is the only measure of damages. All the court can do is to apply it to particular cases, construing the rule in the same manner as the other code provisions, liberally, "with a view to effect its objects and to promote justice." (Code Civ. Proc., sec. 4.). The rule of damages stated in the last clause of section 377 is expressly made the only rule to be applied in any action under either section. An examination of the decisions and a consideration of the subject satisfies us that the statute does not fix the period of minority as a limit beyond which the jury cannot go in estimating the probable pecuniary loss. Every case must depend on its own facts and circumstances. As decisions are made in such actions, general rules will gradually be formed for the guidance of the trial court and the jury in determining what is just and what circumstances may be considered in estimating damages in particular classes of cases, but they will probably never reach the point where such rules can be said to be invariable and not subject

to modification by reason of peculiar or extraordinary circumstances. Some well-settled rules are, however, of such a nature that they must apply to all cases of the class to which they belong. In actions by a parent, either for the death or the injury of a child, the damages to be allowed are those, and those only, which have been, or may be, suffered by the parent. No damages can be given in such an action for pain or anguish inflicted on the child, or for any pecuniary injury personal to such child. (*Durkee* v. *C. P. R. R. Co.*, 56 Cal. 388, [38 Am. Rep. 59].) In all actions, under either section, the damages are limited to the pecuniary loss suffered by the person or persons for whose benefit the right of action is given from the death or injury of the victim. (*Morgan* v. *S. P. Co.*, 95 Cal. 516, [29 Am. St. Rep. 143, 17 L. R. A. 71, 30 Pac. 603] ; *Sneed* v. *Marysville etc. Co.*, 149 Cal. 710, [87 Pac. 376], and the numerous cases there cited; *Johnson* v. *S. P. Co.*, 154 Cal. 298, [97 Pac. 520] ; *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 716, [106 Pac. 83].)

It would seem to follow from this rule absolutely limiting the damages in every case to the pecuniary loss occasioned by the death, and upon a consideration of that justice which the statute itself invokes, that this pecuniary loss should be extended to, and should include, all pecuniary loss of every kind which the circumstances of the particular case establish with reasonable certainty will be suffered by the beneficiary of the statute in the future, because of the death of the victim. Nothing less would be a just compensation for the injury, and anything more, or anything in the realm of improbability, conjecture or mere fancy, would be beyond the purview of the statute and unjust to the defendant. In many cases where the minor is near majority, the certainty of pecuniary loss from his death, to the parent, accruing after his minority, would be as great as the certainty of such loss during minority, and the expectation of benefits for many years thereafter would be as well established as in the case of the death of an adult. In other cases, where the child is a mere infant, the expectation of pecuniary benefits to accrue in the years following its arrival at majority would be so remote that it could not justly be made the basis for a large addition to the damages. So in the case of some adults such benefits would be exceedingly improbable. But the statute prescribes but one rule for all cases: "Such

damages may be given as under all the circumstances of the case, may be just." The manifest effect of this language is that in all cases to which the rule applies it is to be left to the jury to say, upon a consideration of the facts, what amount is a just compensation for the financial loss which the evidence shows will probably be directly or proximately caused by the death of the victim.

In cases arising under section 377, referring to adults only and where the pecuniary loss of those who are heirs of the victim are to be considered and estimated, this is the settled rule. In *Sneed* v. *Marysville etc. Co.,* 149 Cal. 710, [87 Pac. 376], the victim was an adult unmarried man, twenty-two years of age, his father and mother being apparently the only heirs. He was living with them and working out for himself. The court said: "This pecuniary loss may be either a loss arising from the deprivation of something to which such heirs would have been legally entitled if the person had lived, or a loss arising from a deprivation of benefits which from all the circumstances of the particular case, it could be reasonably expected such heirs would have received from the deceased had his life not been taken, although the obligation resting on him to bestow such benefits on them may have been a moral obligation only." *Redfield* v. *Oakland etc. Co.,* 110 Cal. 277, [42 Pac. 822, 1063], was a case prosecuted by a husband and minor children for the death of the wife and mother. The jury was instructed that it might allow "for the probable loss of any benefit, if any, of a pecuniary value which the child would probably receive from its mother *after* its arrival at majority." This was held to be correct. (See, also, *Hillebrand* v. *Standard Box Co.,* 139 Cal. 236, [73 Pac. 163] ; *Johnson* v. *S. P. Co.,* 154 Cal. 298, [97 Pac. 520] ; *Beeson* v. *Green M. G. M. Co.,* 57 Cal. 37 ; *Simoneau* v. *Pac. E. R. Co.,* 8 Cal. App. Dec. 595, [115 Pac. 320] ; *Ruppee* v. *United Railroads,* 1 Cal. App. 666, [82 Pac. 1073] ; *Valente* v. *Sierra R. R. Co.,* 158 Cal. 412, [111 Pac. 97].) The first statutory enactment in England giving a right of action for injuries causing death is known as Lord Campbell's Act, passed in 1846. It authorized such damages as the jury "should think proportioned to the injury resulting from such death to the parties, respectively, for whom and for whose benefit such action shall be brought." This is nowise different in substance from the rule stated in our section 377. In applying that act

the English courts have laid down and uniformly adhered to the doctrine that the damages "should be calculated in reference to a reasonable expectation of the life." (*Franklin* v. *S. E. Ry. Co.,* 3 Hurl. & N. 212.) In that case the suit was in behalf of a father for the death of his son, a young man earning good wages and well disposed to assist his father. The court said: "We do not say that it was necessary that actual benefit should have been derived, a reasonable expectation is enough, and such reasonable expectation might well exist, though from the father not being in need, the son had never done anything for him." In *Pym* v. *Great Northern Ry.,* 4 Best & Smith, 408, the court of Queen's Bench, per Erle, J., says of these actions: "The right to damages is based on the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased. (See, also, *Dalton* v. *S. E. Ry. Co.,* 4 Com. Bench (N. S.) 305; *Weems* v. *Mathieson,* 4 Macqueen App. Cas. 223; *Hetherington* v. *N. E. Ry. Co.,* 9. L. R. Q. B., Div 160.) The general rule in the United States under similar statutes is the same. We do not think it necessary to cite the numerous cases to this effect. The cases relating especially to the death of minor children may be found digested and cited in 4 Sutherland on Damages, 3d ed., sections 1272 to 1275, inclusive, and Tiffany on Death by Wrongful Act, sections 165 to 168, inclusive. (See, also, 2 Sedgwick on Damages, 8th ed., secs. 574, 575, 576; 2 Shearman & R. on Negligence, secs. 769, 772; 6 Thompson on Negligence, sec. 7089.)

In England, and in nearly all of the states, the statute makes no distinction between minors and adults but gives the right of action for the death of any person, whatever his age, to, or for the use of, the heirs. The defendant argues that there must be a distinction under our statute, in respect to damages, as between minors and adults, because the statute itself makes a distinction in respect to the parties plaintiff.

The statute, it must be admitted, presents in its practical application some peculiar features. In the original Practice Act, sec. 11, declared that "a father, or, in case of his death or desertion of his family, the mother, may maintain an action for the injury or death of a child; and a guardian for the injury or death of his ward." (G. & S. Comp. Laws, 1850-53, p. 520.) It is probable that the legislature supposed that this

section gave a right of action for an injury causing the death of a child. The supreme court held it did not, and that it merely designated the party authorized to sue for such injury, if subsequent legislation should give a right of action therefor. (*Kramer* v. *Market St. R. Co.*, 25 Cal. 436.) The act of 1862 (Stats. 1862, p. 447) gave a right of action to the personal representative of the deceased for an injury causing the death of any person, which would include both minors and adults, and by implication it repealed section 11 aforesaid as to the parties. (*Kramer* v. *Market St. Ry. Co.*, 25 Cal. 436.) Nevertheless, in enacting the codes, the language of section 11 was reproduced *verbatim,* as the original section 376 of the Code of Civil Procedure. Section 377, in its original form, included minors as well as adults and, of course, gave a right of action for the death of minors or adults alike to the heirs or personal representatives. In 1874 section 377 was amended by the insertion of the words "not being a minor" after the word "person" in the first line of the first sentence, thus excluding minors from its operation, and section 376 was amended to its present form, as above given, inserting the word "minor" before the word "child," but otherwise retaining the peculiar language of the Practice Act. Section 376 as thus amended gives a right of action for a negligent injury causing the death of a minor, but not in all cases.

If the minor has no parent living, nor any guardian, no right of action for his or her death is given by either section, although such minor may leave surviving a wife, a husband, children, or brothers and sisters, who would be as substantially injured by the death as if the deceased had become of age before death ensued. If he has a guardian, such guardian may maintain an action for the death, against the person whose negligence caused it, but whether as a sort of statutory representative of, or trustee for, the heirs really injured thereby, or otherwise, is left to conjecture. Unless he is to sue for the benefit of such persons and is to recover for them the damage they suffer, it is difficult to perceive how any damage could be allowed in such an action by a guardian. If the ward is injured but not killed, the guardian would, of course, represent the ward and recover the damages personal to the ward. If the ward happened to be an adult, as might be the case, he would be within the terms of section 377 also,

and further interesting questions as to proper parties plaintiff might arise. These anomalies show that section 376 was not carefully or skilfully drawn and suggest that caution is necessary in its construction and application.

The main argument of counsel for defendant in regard thereto is that, inasmuch as the right of action for the injury or death of a minor is given only to the person who, by other statutory provisions, is entitled to its earnings and services during minority, the conclusion follows that the recovery was intended to be limited to the value of such services and earnings, calculated for the remaining period of minority only. Counsel call attention to the coincidence that the persons who may sue are the persons who are entitled to the child's services, and that if, at the time of the death of a minor, there is no person in existence who would have been legally entitled to the services and earnings of the minor, if he had lived, no action for his death can be maintained. It is also suggested that for the death of a child before majority the father may recover the whole damage for his own use, while for his death the day after, the parent cannot sue unless he is an heir, and he can in that case recover only his share as an heir. These discriminations, it is argued, show the legislative intent to limit the right of recovery of the parent, suing as such, to that to which he would have been legally entitled if the child had lived, and of which the untimely death deprived him, that is, the child's earnings and services during the residue of its minority. We regard these anomalies as mere evidence of careless legislation. If the parent's recovery is limited to the minority of the child the consequences would in many cases be equally absurd. If, for example, the child dies the day before majority, under that rule the parent could recover only nominal damages, but if it died the day after, the heirs, a class which in most cases includes the parents, would recover the full pecuniary value to them of the life of the deceased. In neither alternative is the absurdity sufficient to overcome the fact that the same rule of damages is fixed for all cases and that it is stated in terms which have an obvious meaning, well established, extending the recovery to the reasonable expectation of pecuniary benefit from the continuance of the life, after as well as before majority.

In Missouri, where a different rule prevails, the statute

limits the damages of the parent or heir to the "necessary injury resulting from such death." The decisions in that state, in regard to actions by a parent, are based on the ground that the words "necessary injury" should be construed to include only such damages as arise from the deprivation of that to which the plaintiff would have had a legal right, and, hence, that in the case of the death of a minor child the parents' recovery was limited to the probable net value of its services during the residue of its minority, and to the expense of nursing and burial. (*Parsons* v. *Missouri P. R. Co.,* 94 Mo. 286, [6 S. W. 464]; *Leahy* v. *Davis,* 121 Mo. 227, [25 S. W. 941]; *Hickman* v. *Missouri etc. Co.,* 22 Mo. App. 344.)

In the only states having statutes similar to our own which follow the same rule as Missouri—namely, Maryland, Pennsylvania, and Rhode Island—the reasons assigned are the difficulty of estimating the prospective damages, if extended beyond minority, and the danger of excessive verdicts if juries are allowed to indulge in speculation and conjecture as to what might occur after that period. (*State* v. *Baltimore etc. Co.,* 24 Md. 84, [87 Am. Dec. 600]; *Agricultural Assoc.* v. *State,* 71 Md. 86, [17 Am. St. Rep. 506, 18 Atl. 37]; *Penna. R. Co.* v. *Kelly,* 31 Pa. St. 372; *Penna. R. Co.* v. *Zebe,* 33 Pa. St. 330; *Lehigh Co.* v. *Rupp,* 100 Pa. St. 99; *Schnable* v. *Providence Market,* 24 R. I. 477, [53 Atl. 634].) These reasons have equal potency when applied to actions for damages from the death of adults. But, as above stated, they have been held insufficient in all the other states of the Union, including California, and in England, where it is held that the recovery may extend to all pecuniary benefits reasonably to be expected, whether founded on legal right or otherwise, and embracing the full period of the expectancy of life common to both the deceased and the beneficiary. If these reasons do not control in actions for the death of adults, they should not control in actions for the death of minors, since the statute makes the same rule apply to both.

There are several cases in this state which, in effect, decide that the jury, in such cases, may allow as damages the loss of the pecuniary benefits which there is reasonable ground to believe the parent would have received from the minor child after majority. *Nehrbas* v. *C. P. R. R. Co.,* 62 Cal. 320, was an action by a parent to recover damages for the death of five

minor children. The question whether pecuniary loss from deprivation of the services of a child, reasonably to be expected after minority, could be considered, was presented and argued by counsel. The court held that the rule established in actions for the death of adults, as stated in *Beeson* v. *Green Mountain G. M. Co.*, 57 Cal. 37, was applicable to cases of the death of minors. The argument of counsel shows that the case clearly involved and required a decision that pecuniary benefits reasonably to be expected after majority could be estimated. The opinion must be so understood. It declares that it is not the law in this state that the jury is "limited to the actual pecuniary injury sustained by the plaintiff by reason of the loss of the services of his children." So far as this seems to say that any other than pecuniary loss can be allowed, it was disapproved in *Morgan* v. *S. P. Co.*, 95 Cal. 518, [29 Am. St. Rep. 143, 17 L. R. A. 71, 30 Pac. 603]. But in so far as it holds that the rule as to prospective benefits is the same for the death of a minor as for the death of an adult, the decision stands unimpeached. *Lange* v. *Schoettler*, 115 Cal. 388, [47 Pac. 139], was an action by a parent for the death of a minor child. Exemplary damages had been allowed and for that reason the judgment was reversed. In stating the proper rule of damages in such cases, the court said that the only damage allowed, under the statute, "is the probable value of the life to those in whose behalf the action is brought," and throughout its discussion there is no suggestion of any limitation measured by the period of minority. It is proper to add that the record of the case shows that the court below had instructed the jury that they could give compensation only for the value to the parent of the services of the child during its minority. As the appeal was taken by the defendant, this instruction was not a matter for review in the supreme court. But it will be seen that the rule stated by the supreme court is much broader than that given in the instruction.

It is claimed that the case of *Fox* v. *Oakland etc. Ry. Co.*, 118 Cal. 55, [62 Am. St. Rep. 216, 50 Pac. 25], overrules the previous cases and establishes the rule that a parent may recover only for the loss of pecuniary benefits during the period of the child's minority. An examination of the case shows that this question was not presented or discussed in the briefs and was not involved in the points presented to this court on

the appeal. What was said by the court on the subject was a mere recital or remark, scarcely amounting to a *dictum.* The child, a son, was, when killed, four and one half years old. The trial court had instructed the jury that they could not "assess plaintiff's damages beyond the probable value of the services of the deceased, until he had attained his majority, taking into consideration the cost of his support and maintenance during the early and helpless part of his life." The plaintiff had apparently accepted this as the correct measure of damages. The jurors were bound by it. A verdict for six thousand dollars' damages was rendered. The appeal was by the defendant. It, of course, did not complain of the limitations thus imposed on the jury. On the contrary, its counsel insisted that the damages given, when measured by this limited rule, were necessarily excessive and could only be explained on the theory that the jurors were swayed by passion or prejudice, and that the trial court, as a matter of law, should have granted a new trial on that ground. So far as the damages were concerned, this was the only question submitted to or considered by the court. In introducing the subject the court, in the opinion, referred to the facts bearing upon it, and the instructions relating to it, saying that "the jury were *properly* instructed that they could award nothing in the way of penalty for his death, nor for sorrow or grief of his parents, but must confine their verdict to an amount which would justly compensate plaintiff for the probable value of the services of the deceased until he attained his majority." (Italics ours.) The court then proceeded to consider the only question presented, that is, whether "upon the evidence and these instructions" the award of six thousand dollars was excessive, and reached the conclusion that it was too much and that the verdict was prompted by improper motives on the part of the jury. In considering the motives of the jury the instructions under which it acted may be looked into, and for that purpose their accuracy as law is not material. Inasmuch as the soundness of the instructions mentioned as "properly" given in the above quotation from the opinion, was not disputed or argued, but was conceded by both parties, the fact that they were assumed to have been proper by the court, in a discussion as to the motives of the jury, is of no great significance or importance. It is obvious that the statement, if in fact intended to

apply to this particular instruction at all, was at most pure *dictum* and that it is entitled to no weight as a decision on the point.

Respondent's counsel say that the Fox case has been cited with approval by this court in subsequent decisions. In none of them, however, is the part of it here involved and relied on by respondent cited or approved. It is wholly without support on this point from any other decision.

The court below erred, therefore, in directing the jury to consider the pecuniary value of the son's services only for the period between the time of his death and the time he would have become of adult age. It was alleged and admitted that he had practically arrived at manhood, was strong and robust and was earning good wages with which he helped to support his mother. These circumstances established a reasonable probability that the same conditions would have continued for some time after he became of age. It should have been left to the jury to determine this probability and to include in the damages the present value of the benefits which it could reasonably be expected he would have bestowed upon her during her expectancy of life. With regard to the danger of excessive verdicts from this rule, we can only say that the remedy is practically committed entirely to the judge who presides at the trial in the court below. If he does his duty he will carefully weigh the evidence himself and will not allow a verdict to stand for its full amount if he believes it gives more damages than the pecuniary loss that it may be reasonably supposed the plaintiff will actually suffer by being deprived of the services, earnings, society, comfort, and protection of the child. The rule that allowance may be made for pecuniary loss from deprivation of society, comfort, and protection of a son is apparently settled and cannot now be disturbed. It is evident to us, however, from the cases that have come before us, that it often leads to extravagant verdicts in which the jury, in fact, allow a supposed compensation for sad emotions and injured feelings, instead of confining their verdict to the actual pecuniary loss. While it cannot be said that comfort, society, and protection is never of any pecuniary benefit either in saving or gaining money or property, it must be admitted that the connection can seldom be traced from one to the other. Juries should be insistently cautioned not to allow

compensation for the sorrow and distress which always ensues from such a death, nor for a pecuniary loss which is remote or conjectural in the particular case. The trial court should be vigilant to set aside verdicts where there is reason to believe this has been done, or that passion, prejudice, or sympathy has influenced the jury to give more than the facts reasonably warrant. We have cause to fear that the trial courts sometimes act on the theory that they can shift the responsibility in this matter to the appellate court, and that an excessive verdict can be corrected on appeal. This is a mistake. Our power over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury. (See *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 716, [106 Pac. 83] ; *Wheaton* v. *North Beach etc. Co.,* 36 Cal. 591.) Practically, the trial court must bear the whole responsibility in every case.

The court could not have properly given judgment for the twenty-four hundred dollars which the jury found the mother would probably have received from the son had he lived. She was not entitled to a present judgment for the total amount of such future receipts, but only for the present value. No basis for the calculation of such present value appears, and therefore the court could not determine the correct amount due on that account.

It was not necessary to specifically allege the loss of society, comfort, protection, or services. Evidence could be given of the facts relating thereto and allowance could be made therefor under the general allegation of damages. (*Morgan* v. *S. P. Co.,* 95 Cal. 518, [29 Am. St. Rep. 143, 17 L. R. A. 71, 30 Pac. 603] ; *Peden* v. *American Bridge Co.,* 120 Fed. 523; *Haug* v. *Great Northern Ry. Co.,* 8 N. Dak. 31, [73 Am. St. Rep. 727, 77 N. W. 97, 42 L. R. A. 664].)

If the jury followed the instructions, as we must presume, they must have allowed $4,095 as the pecuniary loss accruing solely from deprivation of the society, comfort, and protection of the son during the mother's expectancy of life. The evidence is not in the record. We must presume it was sufficient, as matter of law, to sustain that allowance. We could not consider its weight, as against the decision of the lower court, if it tended to sustain the same, even if it were set forth in

the record. We are not advised as to the reasons which led that court to refuse judgment for the whole amount of the general verdict. If a motion for a new trial on this ground is properly and regularly interposed, that court would have power to reduce or set aside the verdict. In the absence of such motion, it should have granted the plaintiff's motion to render judgment for forty-five hundred dollars, unless the amount was so obviously the result of passion, prejudice, or a disregard of the instructions as to justify the court in ordering a new trial of its own motion. As it did not do so, it is to be presumed that there was no cause for such action.

The judgment is reversed and the cause is remanded to the court below with directions to render judgment for the plaintiff for the sum of forty-five hundred dollars, without prejudice to any pending motion of the defendant for a new trial, or to the right of the defendant, if any it has, to move thereafter for a new trial.

Angellotti, J., Lorigan, J., Sloss, J., and Melvin, J. concurred.

An application by the appellant having been made for a modification of the foregoing judgment, the following opinion was rendered thereon on February 9, 1911:—

THE COURT.—The appellant asks the court to modify the judgment heretofore given by adding a direction that in giving the judgment in the court below the accrued interest on the verdict shall be included. Our consideration of the verdict and judgment was entirely in relation to the state of the case at the time the judgment appealed from was given in the court below. It was with reference to that period that we directed the entry of judgment by that court for the sum of forty-five hundred dollars, upon the going down of the *remittitur*. There was no intention to restrict the power of the court below, or of its clerk, to perform the ministerial duty of computing the interest which has accrued between the date of the return of the verdict and the entry of the judgment and including it in the judgment finally entered, as provided by section 1035 of the Code of Civil Procedure. The court below will be at liberty to perform that duty, or see that its clerk does so, notwithstanding the language of the mandate of the decision hereinbefore given by this court.