**MOURATIS v. NAGLE, Commissioner of Immigration.**

Circuit Court of Appeals, Ninth Circuit.
March 12, 1928.

No. 5294.

1. **Aliens** ☞54(8)—Testimony in deposition of alleged prostitute as to alien's ownership of alleged house of prostitution held incompetent in deportation proceedings.

In proceedings to deport alien on ground that he was connected with a house of prostitution and gave assistance to a prostitute, testimony in deposition of alleged prostitute that alien sought to be deported and another were owners of the alleged house of prostitution, and that such owners were cousins, *held* incompetent.

2. **Aliens** ☞54(8)—Asking alleged prostitute whether alien sought to be deported knew she was practicing prostitution held incompetent.

In proceedings to deport alien, on ground that he was connected with house of prostitution and gave assistance to a prostitute, question asked of alleged prostitute as to whether alien knew that she was practicing prostitution *held* incompetent.

**3. Aliens ☞54(9)—Alleged prostitute's statement that alien knew she was practicing prostitution, wtihout supporting fact or circumstance, held insufficient to warrant finding of alien's knowledge.**

In proceedings to deport alien on ground that he was connected with house of prostitution and gave assistance to a prostitute, alleged prostitute's bare affirmative answer to question whether alien knew she was practicing prostitution, made without supporting fact or circumstance, *held* insufficient to warrant a finding of alien's knowledge.

**4. Habeas corpus ☞92(1)—Deportation order, based on incompetent testimony, should have been set aside in habeas corpus proceeding.**

Order of deportation, based on incompetent ex parte testimony in deposition of witness, should have been set aside by the court in habeas corpus proceedings.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California.

Habeas corpus proceeding by Nick Mouratis against John D. Nagle, as Commissioner of Immigration at the Port of San Francisco, Cal. From a judgment denying his petition for writ of habeas corpus (21 F.[2d] 694), petitioner appeals. Reversed, with directions.

Henry Heidelberg, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The appellant, an alien of the Greek race, was ordered deported upon a finding (1) that he was connected with a house of prostitution, and (2) that he gave assistance to a prostitute. From a judgment of the court below, denying his petition for a writ of habeas corpus, he prosecutes this appeal.

In respect to the vital issues it is virtually conceded by the government that the order of deportation rests upon an ex parte affidavit of the alleged prostitute, and the probative value of this affidavit is the controlling question for consideration.

The alien came to the United States in 1903, and for the last 15 years at least has resided in the town of Vallejo, California; he is 49 years of age, has never been married, and has worked in different capacities—in a store, on boats, as a fisherman, and as a laborer. On February 7, 1927, he was living, and for some time prior thereto had lived, at 111 Virginia street, which was a small rooming house, of nine or ten rooms, upon which he had a lease. This is the house referred to in the order of deportation as a house of prostitution. Ostensibly, at least, he ran it as a rooming house for men, and at the date mentioned had three or four permanent roomers. According to his testimony, while he was looking for a housekeeper, the woman in the case, Jane O'Neil, then employed in a restaurant, applied to him for the place, and he engaged her, on February 1, 1927. Her duties were to "take care of the house, make the beds, and clean up," for which service he paid her $12 per week, and furnished her with room and board. On the night of February 7th, a week after she began her service, an immigration inspector went to the house to investigate. Responding to his knock, the alien came to the door, and upon being advised of his official character and of his desire to make an investigation, he unlocked an inside screen door and let him in. Jane O'Neil was seated in the kitchen, and in the same room was one Gus Atheneisula, a friend of the alien, who roomed and boarded at the house. It may be said in passing that, acting upon the assumption that this man was jointly interested with Mouratis, the inspector also caused him to be arrested, but presumably because it turned out that he had no interest, and was paying for his room and board a stipulated sum per week, he was subsequently released. In answer to questions put to her by the inspector in the presence of the two men, the woman stated that she was the housekeeper; whereupon, with the explanation that he wished to take her sworn statement, he asked her to accompany him into an adjoining room, and there, having closed the door and being alone with her, he took the affidavit or deposition in question. At the hearing following the arrest of the two men, this affidavit was, over the objection of counsel for the alien, admitted in evidence. Asked by the inspector who conducted the hearing whether he desired to cross-question the affiant, counsel replied in the negative, and stood upon his objections to the admissibility of the affidavit.

[1] Assuming that, under the circumstances shown, the affidavit was admissible, and could properly be considered by the immigration officers as having some probative value in so far as it purports to state facts touching which the affiant was competent to testify—that is, facts within her personal knowledge—we are nevertheless of the opinion that it was insufficient to warrant the findings upon which the order of deportation is based.

The affidavit, in the form of a deposition, shows that upon questions put to her by the inspector the woman stated that she was born in the United States, that she had been practicing prostitution for two years, that she had never been arrested for such misconduct, that she had been at 111 Virginia street seven days, and that "Nick and Gus, two cousins," were the owners. Quite clearly she was incompetent to testify who were the owners, or that Nick and Gus were cousins, and her answer in that respect was a mere assumption, which no one now contends was correct. She further stated that she paid nothing for her room, that, upon the other hand, Nick paid her $12 a week, and that she had applied for the job; that she had practiced prostitution since she came there, but Nick and Gus took none of her money. To the vague question, "Who opens the door and lets the men in?" she answered, "Either one of them." But to a question of similar form, "Who opened the door for me [the inspector]?" her answer was, "Nick."

"Q. Are they all friends of Nick and Gus who come to see you? A. I do not know.

"Q. Do Nick and Gus know that you practice prostitution here? A. Yes; but they never asked me to go with a man.

"Q. What rooms did you sit in? A. In the kitchen with Nick and Gus.

"Q. Where are the arrangements made with you? A. In the kitchen, or in the bedroom. Sometimes I ask my friends into my room."

[2, 3] To ask the affiant whether the two men knew she was practicing prostitution was to put to her an incompetent question. Jones. Com. on Evidence (2d Ed.) vol. 3, p. 2010. Union Pac. Ry. Co. v. O'Brien, 161 U. S. 451, 16 S. Ct. 618, 40 L. Ed. 766; s. c. (C. C. A.) 49 F. 538; Rucker v. Bolles (C. C. A.) 80 F. 504; Sneed v. Marysville G. & E. Co., 149 Cal. 704, 87 P. 376; Reese v. Mining Co., 17 Utah, 489, 54 P. 759; McCarthy v. Village of Northfield, 89 Vt. 99, 94 A. 298, Ann. Cas. 1918A, 943; State v. Dushman, 79 W. Va. 747, 91 S. E. 809; Worden v. Gore-Meehan, 83 Conn. 642, 78 A. 422; White, etc., v. Dorsey, 119 Md. 251, 86 A. 617, 622; Ashford v. Ashford, 136 Ala. 631, 34 So. 10, 96 Am. St. Rep. 82; State v. Worthen, 111 Iowa, 267, 82 N. W. 910. And her bare affirmative answer, without supporting fact or circumstance, is insufficient to warrant a finding of knowledge. Not only is there a total want of such support, but, under the circumstances disclosed by the

24 F.(2d)—51

record, the correctness of the affiant's assumption or conclusion expressed in the answer is quite improbable.

When the inspector went to the house, undoubtedly he held it under suspicion; but after his arrival there he observed no impropriety, and until he took the woman into the room by herself, and procured from her this statement, he saw nothing and heard nothing tending in the slightest degree to reflect upon either her, the two men, or the house. That a housekeeper, her employer, and his friend, a roomer, were sitting in an open kitchen, was without suggestion of immorality. She had not been sought out by appellant, but had herself applied for employment. Appellant was without incentive of profit; he was paying what would appear to be a fair compensation for the woman's services as housekeeper, and got no share of her illicit gain. He never suggested that she have improper relations with men; he had not known her before she sought employment, and according to the emphatic testimony of the inspector she did not have the appearance of a prostitute. Appellant had lived in the community for 15 years, and if credence is to be given to the practically undisputed testimony of three citizens of apparently good standing and numerous testimonials of other citizens, which the immigration officers received and treated as evidence, he had never before been arrested, and had borne a good reputation as an industrious and law-abiding man.

[4] We refer to these circumstances, not for for the purpose of determining the credibility of witnesses, or of resolving the weight of conflicting evidence, but as emphasizing the legal impropriety of basing a vital finding of fact upon an answer, in the nature of an assumption or conclusion, given to an incompetent ex parte question. Seemingly the consideration which we hold to be controlling was not urged upon the attention of the District Judge, and while, therefore, he felt impelled to deny relief, his comment upon the record makes it clear that he was highly discontent with the result, and with the apparent indisposition of the immigration officers adequately to protect the rights of the alien.

Reversed, with directions to try the issues de novo, as suggested in Chin Yow v. United States, 208 U. S. 13, 28 S. Ct. 201, 52 L. Ed. 369; Hanges v. Whitfield (C. C. A.) 222 F. 745; Svarney v. United States (C. C. A.) 7 F.(2d) 515.