## AMERICAN R. CO. OF PORTO RICO v. SANTIAGO et al.

(Circuit Court of Appeals, First Circuit. January 5, 1926.)

No. 1789.

**1. Trial ⬧⟲419—Defendant, by presenting its defense, waived its rights under its motion to dismiss complaint, made at close of plaintiff's case.**

Defendant, by presenting its defense, waived its rights under its motion to dismiss complaint, made at close of plaintiff's case.

**2. Death ⬧⟲31 (7)—Divorced father, maintaining home for children awarded to wife, held entitled to sue for death of child.**

Where mother procured divorce, with right to parental control and custody of children, but left children with father, who thereafter maintained home for them, father did not desert family, within Code Civ. Proc. Porto Rico, § 60, so as to be precluded from suing for death of child.

**3. Death ⬧⟲79—Motion to dismiss father's complaint for want of proof of substantial damages properly refused.**

Where father had right to sue for death of minor son, under Code Civ. Proc. Porto Rico,

§ 60, defendant's motion to dismiss complaint at close of all the evidence was properly refused, even if father failed to prove substantial damages, since he was in any event entitled to at least nominal damages.

**4. Death ⬧⟲77—Evidence held to authorize awarding father substantial damages for death of minor son.**

Evidence *held* sufficient to authorize awarding father substantial damages for death of 13 year old son at railroad crossing, under Code Civ. Proc. Porto Rico, §§ 60, 61.

**5. Trial ⬧⟲337—Instructions given constitute law of trial, and must be followed by jury, even if improper.**

Instructions given constitute law of trial, and must be followed by jury, even if improper.

**6. Death ⬧⟲99(3)—Award of $6,000 to father for death of minor son held unauthorized.**

Evidence *held* not to warrant award of $6,-000 to father for death of 13 year old son, under instructions that under law of Porto Rico, parents of minor are entitled only to usufruct of minor's earnings, amounting to 6 per cent. interest on such wages, less cost of living and medical assistance.

**7. New trial ⬧⟲77(1)—Instructions may be looked to in considering jury's motives in awarding damages.**

Instructions may be looked to in considering motives of jury in awarding damages, and for that purpose their accuracy as law is immaterial.

**8. Railroads ⬧⟲307(3)—Safeguards required at crossing, in absence of orders from governmental authorities.**

Instruction that railroad was not required to maintain watchman and chains at crossing, in absence of orders from Executive Council, or Public Service Commission, *held* properly refused.

**9. Death ⬧⟲81—Elements of damages for death of minor son stated.**

Under Code Civ. Proc. Porto Rico, §§ 60, 61, in action for death of minor son, court should instruct that, in determining father's pecuniary loss, jury might consider probable duration of father's life, and pecuniary benefits he might reasonably be expected to receive from son during period of common life expectancy, including money, personal attention, care, protection, and assistance, but not pain and suffering of son, or grief of father, and that nothing should be awarded as vindictive damages.

In Error from the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Action by Juan Ramon Santiago and another against the American Railroad Company of Porto Rico. Judgment for plaintiffs, and defendant brings error. Reversed, and remanded for new trial.

Francis H. Dexter, of San Juan, Porto Rico, for plaintiff in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action brought in the federal District Court for Porto Rico by Juan Ramon Santiago and Juana Arroyo to recover damages occasioned by the death, on March 11, 1922, of their minor son, Ramon Santiago Arroyo, through the alleged negligence of the defendant at a grade crossing in the city of Mayaguez. It was brought under the provisions of sections 60 and 61 of the Code of Civil Procedure of Porto Rico, which provide:

"Sec. 60. A father, or in case of his death, or desertion of his family, the mother, may maintain an action for the * * * death of a minor child, * * * when such * * * death is caused by the wrongful act or neglect of another. Such action may be maintained against the person causing the * * * death, or if such person be employed by another person who is responsible for his conduct, also against such other person.

"Sec. 61. When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just."

There was a trial by jury, and a verdict for the plaintiff for $6,000, on which judgment was entered, and this writ of error prosecuted.

The errors relied upon are (1) that the court erred in refusing to grant defendant's motion to dismiss the complaint made at the close of the plaintiff's case; (2) that it erred in refusing to grant a like motion to dismiss the complaint made at the close of all the evidence (a) because Juan Ramon Santiago, the father, had no right of action, as his wife, Juana Arroyo, had obtained a divorce from him on October 18, 1913, about eight years and five months prior to the death of the son, and that the court granting the divorce awarded the custody of the son to the wife, together with the patria potestas, and (b) because there was no evidence from which

the jury could legally assess any damages in favor of the wife or husband; (3) that the damages awarded are grossly excessive, not supported by the evidence, and are the result of prejudice; and (4) that the court erred in refusing to give the following instructions:

"You are instructed that, if you believe from the evidence that the defendant company maintained a watchman and chains at the crossing in question for several years, but only at certain hours, the boy Ramon Santiago could not rely upon any duty of defendant to place the chains at any other than those hours, in the absence of any order of the Executive Council or the Public Service Commission requiring it to do so. In this connection the court instructs you that as a matter of law the defendant company was under no obligation to maintain such watchman and chains at the crossing in question, in the absence of any order from the Executive Council or the Public Service Commission, its successor."

[1] We do not find it necessary to consider the questions raised by the motion made at the close of the plaintiff's evidence, for the defendant by presenting its defense waived its rights thereunder, and because the same question is presented by the second motion, made at the close of all the evidence.

The question raised by the second motion is whether or not a verdict should have been directed for the defendant, so far as Juan Ramon Santiago was concerned, on the ground that he had no right to maintain the action (a) because the evidence showed that the wife had obtained a divorce eight years prior to the accident and had been awarded the custody of their minor child, Ramon, together with the patria potestas; and (b) because, as defendant contended, the plaintiffs had failed to offer any proof from which damages could be found in favor of either plaintiff.

[2] On the question of the right of the father to maintain the action for the death of his minor child section 60 expressly provides that "a father, or in case of his death, or desertion of his family, the mother 'may maintain" it. The evidence in the case shows that the father is alive; that the mother had, some eight years prior to the son's death, obtained a divorce with a right to the parental control and custody of the child. It further shows that there were several children in the family; that, after obtaining a divorce, the mother left the children with the father and went to Santo Domingo where she remained;

and that the father thereafter maintained a home for and supported and educated the children, including Ramon.

On this evidence, notwithstanding the divorce, it could not be found that the father had deserted his family, so as to deprive him of the right to maintain the action and give it to the mother, within the terms of section 60.

This question was before the court in Clark v. Northern Pacific Ry., 29 Wash. 139, 69 P. 636, 59 L. R. A. 508. The provision of the Code there under consideration was identical with that of section 60 of the Porto Rican Code. The action was brought by the mother for the death of her minor son, and it was objected that she had failed to show any right enabling her to maintain the action. The accident occurred in 1901. In 1897 the parents were divorced, and by the terms of the decree the custody of the son was awarded to the father. The father kept the boy about two weeks, then brought him back to the mother and said, if she would keep him, he would provide for his support. He paid the mother $10 towards the son's support, and then went away and was not heard from thereafter. He made no further contribution. At the time of the accident the boy had been living with and supported by the mother for a period of three years. In that case it was contended by the defendant that by the divorce the family status was broken, so there could be no longer a desertion of the family within the meaning of the statute; but the court held that on the facts in the case it appeared that the father had abandoned the boy, and the family status as "between the mother and child, as constituted by natural relationship, was not broken by the divorce, and their companionship as members of the same household continued"; that "the family status as thus constituted was left by the father without any contribution on his part towards its support"; and that it "was not only an abandonment of the child, but also of the family, within the meaning of the statute."

As on the facts in this case the father cannot be found and held to have deserted the family, the right to maintain an action remained in him.

[3] The second reason assigned by the defendant for granting the motion to dismiss is without merit. The father having the right to maintain the action for the death of the son, the motion to dismiss could not have been granted, even though he had failed to offer proof of substantial damage, for, in any event, he was entitled to nominal damages; and no question is presented as to whether the mother was or was not improperly joined as plaintiff.

While there is no assignment of error questioning the elements of damage which the jury might take into consideration in awarding damages under these sections of the Code, or whether there was evidence from which it could find substantial damages, a brief discussion of these matters will be helpful.

In American R. Co. v. Ortega, 3 F.(2d) 358, this court had under consideration the question of damages that might be awarded under section 61 in an action for the death of an adult daughter, the action having been brought by the father for her death, and it was held (1) that the father need not show that he was legally entitled to any portion of the earnings of the daughter in order to establish a pecuniary loss, and (2) that he might recover the probable benefits he would have received during his lifetime from the deceased child; that such benefits were not limited to mere contributions of money, but might consist of various elements that entered into the domestic relations of parent and child and while living in one family or otherwise; that, while no damages could be given for the pain or anguish suffered by the deceased, the pecuniary loss for which recovery may be had included all the pecuniary losses which the circumstances established with reasonable certainty would be suffered by the plaintiff in the future because of the death; and that, as it appeared in that case that the daughter, 26 years of age, made her home with her father, though away at work at the time of the accident, and while away at work aided him financially, and when at home assisted him in the fields and in the home, there was evidence upon which to base a verdict for damages.

And in Bond v. United Railroads, 159 Cal. 270, 276, 113 P. 366, 369 (48 L. R. A. [N. S.] 687, Ann. Cas. 1912C, 50), where, under like provisions of the Code (sections 376 and 377 of the Civil Code of Procedure of that state) was involved the question of the nature and character of the damages which a parent might recover for the wrongful death of a minor child, it was held that the damages recoverable under either section were limited to the pecuniary loss suffered by the person or persons for whose benefit the right of action was given; that this pecuniary loss included all pecuniary losses of every kind which the circumstances of the

particular case established with reasonable certainty would be suffered by the beneficiary in the future because of the death; and that it is to be left to the jury to say, upon a consideration of the facts, what amount is a just compensation for the financial loss which the evidence shows will probably be directly or proximately caused by the death; and that this recovery may extend to all pecuniary benefits reasonably to be expected, embracing the full period of the expectancy of the life common to both the deceased and the beneficiary. It was there said:

"The rule of damages stated in the last clause of section 377 is expressly made the only rule to be applied in any action under either section. An examination of the decisions and a consideration of the subject satisfies us that the statute does not fix the period of minority as a limit beyond which the jury cannot go in estimating the probable pecuniary loss. Every case must depend on its own facts and circumstances. As decisions are made in such actions, general rules will gradually be formed for the guidance of the trial court and the jury in determining what is just and what circumstances may be considered in estimating damages in particular classes of cases, but they will probably never reach the point where such rules can be said to be invariable and not subject to modification by reason of peculiar or extraordinary circumstances. Some well-settled rules are, however, of such a nature that they must apply to all cases of the class to which they belong. In actions by a parent, either for the death or the injury of a child, the damages to be allowed are those, and those only, which have been, or may be suffered by the parent. No damages can be given in such an action for pain or anguish inflicted on the child, or for any pecuniary injury personal to such child. Durkee v. C. P. R. R. Co., 56 Cal. 388, 38 Am. Rep. 59. In all actions, under either section, the damages are limited to the pecuniary loss suffered by the person or persons for whose benefit the right of action is given from the death or injury of the victim. Morgan v. S. P. Co., 95 Cal. 516, 30 P. 603, 17 L. R. A. 71, 29 Am. St. Rep. 143; Sneed v. Marysville, etc., Co., 149 Cal. 710, 87 P. 376, and the numerous cases there cited; Johnson v. S. P. Co., 154 Cal. 298, 97 P. 520; Hale v. San Bernardino, etc., Co., 156 Cal. 716, 106 P. 83.

"It would seem to follow from this rule absolutely limiting the damages in every case to the pecuniary loss occasioned by the death, and upon a consideration of that justice which the statute itself invokes, that this pecuniary loss should be extended to, and should include, all pecuniary loss of every kind which the circumstances of the particular case establish with reasonable certainty will be suffered by the beneficiary of the statute in the future, because of the death of the victim. Nothing less would be a just compensation for the injury, and anything more, or anything in the realm of improbability, conjecture, or mere fancy, would be beyond the purview of the statute and unjust to the defendant. In many cases where the minor is near majority, the certainty of pecuniary loss from his death, to the parent, accruing after his minority, would be as great as the certainty of such loss during minority, and the expectation of benefits for many years thereafter would be as well established as in the case of the death of an adult. In other cases, where the child is a mere infant, the expectation of pecuniary benefits to accrue in the years following its arrival at majority would be so remote that it could not justly be made the basis for a large addition to the damages. So in the case of some adults such benefits would be exceedingly improbable. But the statute prescribes but one rule for all cases: 'Such damages may be given as, under all the circumstances of the case, may be just.' The manifest effect of this language is that in all cases to which the rule applies it is to be left to the jury to say, upon a consideration of the facts, what amount is a just compensation for the financial loss which the evidence shows will probably be directly or proximately caused by the death of the victim."

In that opinion it is further pointed out that the only states in this country having similar statutes, which hold, in case of the death of a minor child, the parent's recovery is limited to the probable net value of the child's services during its minority, are Maryland, Pennsylvania, and Rhode Island, and that in those states the reason assigned therefor is "the difficulty of estimating the prospective damages, if extended beyond minority, and the danger of excessive verdicts, if juries are allowed to indulge in speculation and conjecture as to what might occur after that period." In answer to these objections the court said:

"These reasons have equal potency when applied to actions for damages from the death of adults. But, as above stated, they have been held insufficient in all the other states of the Union, including California, and

in England, where it is held that the recovery may extend to all pecuniary benefits reasonably to be expected, whether founded on legal right or otherwise, and embracing the full period of the expectancy of life common to both the deceased and the beneficiary. If these reasons do not control in actions for the death of adults, they should not control in actions for the death of minors, since the statute makes the same rule apply to both."

[4] The evidence in the case now before us shows that the son was between 13 and 14 years of age, not a mere infant; that the father was 44 years old and was a plumber by trade, earning from $200 to $300 a month; that the son, at the time of the accident, was in good health, and had been working with the father for a year learning the plumber's trade, living at his father's home and being supported by him; that the son's services during that year were of the value of $7 a week; that he was intelligent, eager to learn, and well inclined towards his father; and that, had he been permitted to continue in his work with his father for a somewhat longer period, he would have been able to earn $25 a week.

From this evidence, their observation of the father, and their general knowledge, the jury reasonably could determine the probable duration of the lives of the father and son, and the probable benefits of a pecuniary nature the father might expect to derive in the future from the son, and the pecuniary loss that he would suffer by being deprived of the personal attention, care, protection, and assistance of the child, if any; in other words, that it would be justified in awarding substantial damages.

[5, 6] The defendant, however, in the court below and here, contends that the only element of damage a parent can recover for the death of a minor child is the pecuniary damage occasioned by the loss of his services during minority; that under the laws of Porto Rico the earnings of a minor child belong to the child, and that the parents are only entitled to the usufruct or income that might be derived from such earnings; and at its request the court below instructed the jury:

"(11) You are instructed that under the law of Porto Rico the property acquired by an unemancipated child by labor or industry or for any valuable consideration, belongs to the said child; parents being entitled only to the usufruct. Therefore, if you believe from the evidence that the boy, Ramon Santiago, had acquired any property by labor or industry, or for any valuable consideration, in the event you find for the plaintiffs, you may allow to them the value of the probable usufruct thereof, calculated from date of his death up to the time of his majority. Section 225, Civil Code. To ascertain the value of the usufruct, you may allow 6 per cent. interest on such amount of the boy's earnings as you believe under the evidence he would reasonably have acquired from date of his death to the time of his majority, less such sums as would reasonably represent the cost of living, including food, lodging, clothing, education and medical assistance; [if] there would be no money remaining, then there would be no usufruct, and you *cannot allow anything* to the plaintiffs.

"(12) In the event you find for the plaintiffs, the value of their interest in the life of their son must be established by clear and positive evidence of the probable amount or sum of his earnings from date of death until the date of his majority. In this case the court instructs you that the amount of such damages cannot be arrived at from conjecture or by taking into consideration *any other elements than the earnings* of said boy to the date of his majority, allowing only the usufruct thereon, after deducting probable cost of living, including board, lodging, clothing and medical assistance."

It was under these instructions that the jury rendered their verdict for $6,000. They constituted the law of the trial. The jurors were bound to follow them.

Under one of its assignments of error the defendant complains that the damages awarded were grossly excessive, not supported by the evidence, and were the result of prejudice, particularly so when considered in relation to the evidence and instructions limiting the scope of the inquiry as to damages. While we regard the instructions given as improper, nevertheless, as they constituted the law of the trial, the jury were bound to follow them, and we are of the opinion that, from the standpoint of these instructions, there was no evidence that would warrant the jury in awarding $6,000 as damages, that the judgment must be vacated, and the verdict, so far as it relates to the question of damages, must be set aside.

[7] It may be suggested that the defendant cannot complain of the instructions given at its request on the question of damages, as it was not harmed by them. The answer to this is that the defendant is not complaining of the instructions, but of the excessive damages awarded under them (the instructions

being the law of the trial), there plainly being no evidence that would warrant the sum awarded under the instructions. In considering the motives of the jury in awarding damages, "the instructions under which it acted may be looked into, and for that purpose their accuracy as law is not material." See Bond v. United Railroads, 159 Cal. 270, 284, 113 P. 366, at page 372 (48 L. R. A. [N. S.] 687, Ann. Cas. 1912C, 50).

[8] As to the requested instruction that was denied, we think the court below did not err. It was misleading, and was apparently drawn with that end in view. Its concluding paragraph would give the jury to understand that, as a matter of law, the defendant was under no obligation to maintain a watchman and chains at the crossing where the accident occurred, in the absence of any orders from the Executive Council or the Public Service Commission, its successor. This clearly was not so.

[9] At a subsequent trial on the question of damages the jury should be instructed, among other things, that, in considering the pecuniary loss which the father has sustained, they may take into consideration the probable duration of life of the father and of the son, the prospective pecuniary benefits which the father might reasonably be expected to receive from the son during the full period of the expectancy of life common to both, including therein not only money contributions, but also such benefits as the father might derive from the personal attention, care, protection, and assistance that the son might bestow upon the father; that in awarding damages the jury should not take into consideration or award anything for the pain and suffering of the son, nor for the sorrow or grief of the father because of the son's death; that nothing should be awarded in the way of vindictive damages; and that the sum awarded should be the present value of the prospective benefits of a pecuniary nature reasonably to be expected under all the circumstances through the full period of the expectancy of life common to both the deceased and the father.

The judgment of the United States District Court for Porto Rico is vacated, the verdict is set aside so far as it relates to the question of damages, and the case is remanded to that court for a new trial on the question of damages. No costs to either party.

ANDERSON, Circuit Judge, concurs in the result.