**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARJORIE J. CHRISTENSEN,
<u>Plaintiff-Appellant,</u>

v.

NORTHROP GRUMMAN CORPORATION,
<u>Defendant-Appellee,</u>

and

No. 97-1096

EMPLOYEES' RETIREMENT PLAN OF THE
GEORGE A. FULLER COMPANY;
PRINCIPAL MUTUAL LIFE INSURANCE
COMPANY, t/a The Principal
Financial Group,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan Jr., Senior District Judge.
(CA-96-304-A)

Argued: July 14, 1997

Decided: October 15, 1997

Before MURNAGHAN, Circuit Judge, PHILLIPS,
Senior Circuit Judge, and BRITT, United States District Judge for
the Eastern District of North Carolina, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded with directions by
unpublished opinion. Senior Judge Phillips wrote the opinion, in
which Judge Murnaghan and Judge Britt joined.

_____

**COUNSEL**

**ARGUED:** Patricia Ann Smith, Alexandria, Virginia, for Appellant. Robert Alan Salerno, SCHWALB, DONNENFELD, BRAY & SIL-BERT, P.C., Washington, D.C., for Appellee. **ON BRIEF:** Charles B. Wayne, SCHWALB, DONNENFELD, BRAY & SILBERT, P.C., Washington, D.C.; Daniel B. Stone, IVINS, PHILLIPS & BARKER, CHARTERED, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

This is an appeal by Marjorie Christensen from an order granting summary judgment to Northrop Grumman Corporation (Northrop), her deceased husband's former employer, in Mrs. Christensen's action claiming the wrongful denial of death benefits under two pension plans and breaches of fiduciary duty by Northrop in the administration of the plans. Because we conclude that Mrs. Christensen is entitled to benefits under one of the plans but not the other and is not entitled to recover for breach of fiduciary duty, we affirm in part and reverse in part.

I

Marjorie Christensen is the surviving spouse of Norman Christensen, who began work at the George A. Fuller Company (Gafco) in 1953 and was a participant in Gafco's retirement plan from its inception in 1956. Mr. Christensen was employed by Gafco or its successors until his death in 1994, when the company was known as American International Contractors, Inc. (AICI). In 1971, Northrop had acquired Gafco and Mr. Christensen officially became a Northrop employee. In 1981 Northrop sold its interest in the company to AICI.

2

Mr. Christensen remained with the company throughout, ultimately rising to the position of vice president.

This dispute arises out of Northrop's decisions with regard to Gafco's retirement plans. When he was employed by Gafco before Northrop purchased the company, Mr. Christensen was a participant in its retirement plan, known as Plan I. Under Plan I, Mrs. Christensen was entitled to a specified pension benefit if her husband died before retirement and had met certain eligibility requirements. Specifically, the plan provided a benefit if the employee,

> as of the date of his death, (1) was continuing in the Service of any of the Employers, (2) had reached his 60th birthday, (3) had completed 10 or more years of service, (4) had contracted the marriage with the surviving spouse at least one year prior to the date of his death, and (5) was not legally separated from the surviving spouse.

J.A. 56A. "Employers" was defined as "the Company (George A. Fuller Company, Inc.), and such other organizations as may hereafter adopt the Plan and Trust in accordance with Article XIV, and their successor or successors." J.A. 53.

Northrop acquired all of Gafco's assets and liabilities, including the pension plan, in the 1971 transaction. Though the parties dispute whether Northrop "terminated" Plan I when it purchased Gafco, or instead amended and superseded that plan,[1] it is clear that Northrop

_____

[1] Mrs. Christensen asserts that"Plan II was merely a restatement of the Gafco plan. Plan II states that its effective date is 1956, and the later-implemented Northrop language was an amendment to the Gafco plan. Computation for accrual of years of service credit included years employed by the predecessor entity, Gafco." Appellant's Br. at 8. The district court held, however, that Northrop terminated Plan I when it purchased Gafco and instituted its own pension plan. We agree that the evidence establishes that Northrop intended to terminate Plan I in 1971, fund the benefits that accrued under that plan, and then provide a new set of benefits under Plan II. Northrop did, however, credit Gafco employees under Plan II for their service before Northrop purchased the company. J.A. 131 § 1.13, 133-34 § 1.30.

3

purchased a group annuity from the Prudential Insurance Company to fund some of the benefits for which Plan I participants had qualified or would qualify. Specifically, Northrop purchased annuities for Mr. Christensen's and other Gafco employees' retirement benefits. Northrop did not, however, purchase annuities to fund the pre-retirement death benefits, deciding it would be less expensive simply to pay whatever benefits became due out of the pension trust fund. Northrop informed the plan participants of this decision, telling them to seek the death benefit not from the annuity but from Northrop itself.

Northrop adopted its own pension plan, Plan II, that covered Gafco employees and in which Mr. Christensen participated while Northrop owned Gafco. Plan II allowed participants to apply pre-1972 employment with Gafco toward eligibility for benefits under Plan II. This plan also provided a benefit in the event of death before retirement, though on slightly different terms than Plan I:

> If a Member should die (1) prior to his termination of employment from the Company for any reason and (2) after having been credited with ten (10) or more years of Vesting Service, and (3) after Early Retirement Age, and (4) prior to his Normal Retirement Age, his Spouse will receive a monthly retirement benefit for her remaining lifetime in an amount equal to 50% of the reduced amount of the monthly retirement benefit the deceased Member would have received assuming he retired early on the date of his death . . . .

J.A. 145. "Company" was defined under Plan II as "Northrop Corporation (including any unincorporated division thereof) and any affiliate or subsidiary in which Northrop Corporation owns more than 80% of the voting stock and any other controlled trade or business as defined in Department of Treasury Temporary Regulations 11.414(c)-1 and (c)-2." J.A. 130.

In February 1981, Northrop sold Gafco, and in connection with the sale terminated Plan II. Northrop purchased another group annuity, this time from Bankers Life Insurance Company, to fund the benefits for which Plan II participants had qualified, though again it did not purchase an annuity for pre-retirement death benefits. Northrop deter-

4

mined that Plan II's assets exceeded the amount required to fund those annuities, so the surplus assets reverted to its treasury. After its sale of Gafco, Northrop explained to plan participants that with regard to Plan I, "Any benefit payable to your eligible surviving spouse as explained in the section entitled `Pre-Retirement Death Benefits' will be paid from the Prior Plan's Trust Fund (sponsored by Northrop Corporation) and not by the insurance company." J.A. 205. Northrop also assumed responsibility for paying whatever pre-retirement death benefits accrued under Plan II.

Northrop has conceded that it made numerous errors in connection with its contract with Prudential for the annuities to pay benefits under Plan I, and that it took steps to correct such errors as late as 1995. For example, Northrop realized that it should have purchased annuities for certain benefits under Plan I, and that it would have to pay these benefits out of the trust's assets. Northrop also has conceded it failed to provide the necessary coverage by the annuities it purchased during the termination of Plan II, and thereafter paid additional premiums to make the necessary adjustments and corrections in the coverage.

Mr. Christensen died in 1994 at age 64, still employed by AICI. When Mrs. Christensen made claims to Northrop for pre-retirement benefits under both plans, Northrop refused to pay any benefit under either Plan I or Plan II, asserting that Mrs. Christensen was ineligible under the terms of the plans. Mrs. Christensen then brought this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), on March 7, 1996. She claimed in Counts I and III the wrongful denial of pre-retirement death benefits under both pension plans and in Counts II and IV that Northrop had breached its fiduciary duty owed to program participants by refusing to purchase annuities to cover her husband's pre-retirement death benefits.[2]

_____

[2] The action also included claims against the AICI pension plan for fraudulent misrepresentation and against Principal Mutual Life Insurance Company for denying benefits allegedly due under the annuities purchased in conjunction with Plan II's termination. Mrs. Christensen settled her claim against AICI, and the district court denied her claim against Principal Mutual. Mrs. Christensen does not pursue this claim on appeal.

5

After discovery, Northrop and Mrs. Christensen filed cross-motions for summary judgment. Northrop asserted statute of limitations defenses to both the denial of benefits and breach of fiduciary duty claims, and contended that as a matter of law Mrs. Christensen was not eligible for death benefits under either of the Plans. Mrs. Christensen contended that she was entitled to benefits under both Plans as a matter of law. The district court granted Northrop's motion as to all the claims, holding that neither Plan I nor Plan II permitted a pre-retirement death benefit when the employee died after leaving Northrop's employ, and that Mrs. Christensen's fiduciary duty claims were barred under the applicable ERISA statute of limitations found in 29 U.S.C. § 1113 (1994). This appeal followed.

II

We review the grant of a motion for summary judgment de novo (see Kimsey v. City of Myrtle Beach, S.C., 109 F.3d 194, 195 (4th Cir. 1997)), and apply the same standard employed by the district court in considering the motion. See Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir. 1988). A claim for a denial of benefits under ERISA "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). It is not contended here that Northrop had any discretion to determine eligibility for benefits under either Plan I or Plan II, and we therefore review de novo its denial of benefits. See Wheeler v. Dynamic Engineering, Inc., 62 F.3d 634, 638 (4th Cir. 1995) ("Because the . . . plan does not expressly give the administrator the discretion to interpret it, we review [the administrator's] interpretation de novo.").[3] We review de novo the district court's dismissal of the breach of fiduciary duty claims on statute of limitations grounds.

_____

[3] We therefore need not consider Mrs. Christensen's contention that Northrop had a conflict of interest in interpreting the plans, and therefore was owed a less deferential standard of review than plan administrators with discretionary authority ordinarily receive. See Bailey v. Blue Cross & Blue Shield of Virginia, 67 F.3d 53, 56-57 (4th Cir. 1995).

A.

The district court dismissed the breach of fiduciary duty claims in Counts II and IV, on the grounds that they were time-barred under the applicable ERISA limitations period found in 29 U.S.C. § 1113 (1994) which provides,

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of --
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

Mrs. Christensen contends that Northrop has had a continuous opportunity to "cure" the alleged breach of fiduciary duty and provide an annuity for pre-retirement death benefits. Its failure to do so, therefore, constitutes an improper "omission" such that under § 1113(1)(B) the statute has not yet run.[4]

Northrop argues, and the district court held, that Northrop's decision not to provide annuities for pre-retirement death benefits under Plans I and II were the "actions" about which Mrs. Christensen complains and that they occurred 25 years (as to Plan I) and 15 years (as to Plan II) before she filed her complaint. In accepting this argument, the district court relied on the D.C. Circuit's decision in Larson v. Northrop Corp., 21 F.3d 1164 (D.C. Cir. 1994). There the court dealt

_____

[4] Alternatively, she contends she did not have actual knowledge of the breach until her benefit was denied in 1995. We can summarily dismiss this argument; the specific breach she alleges is Northrop's failure to provide an annuity, and it is clear that she knew about Northrop's decision in 1971 as to Plan I and in 1981 as to Plan II through its announcements of intention not to provide annuities for those benefits.

7

with a challenge by another Gafco employee to Northrop's failure "to ensure that the group annuity contracts that it had purchased from Prudential and Principal would pay an early retirement subsidy that had existed under the Plan." Id. at 1166 (footnote omitted). The employee argued that the last action connected with the breach occurred when he was denied benefits, not when Northrop purchased the annuities. The court rejected that argument under § 1113(1)(A), determining that the last action occurred when Northrop purchased the allegedly inadequate annuities. See id. at 1169-71. The court expressly did not consider whether this was a case of omission under § 1113(1)(B), though, and does not directly address Mrs. Christensen's argument. See id. at 1168 n.7.

To accept Mrs. Christensen's characterization of Northrop's action in not funding these benefits as an "omission," the district court noted, "would eviscerate § 1113 as it applies to terminated plans. Any participant could defeat the six year statutory limitation simply by recasting the failure to provide a benefit, or, as here, the establishment of eligibility criteria that a plaintiff failed to meet, as an omission which could be cured at any time." J.A. 36. We agree. The alleged breaches of fiduciary duty of which Mrs. Christensen complains were affirmative decisions by Northrop not to purchase annuities that were complete when made in 1971 and 1981. All of the plan participants learned of these decisions when they were made as part of the termination of the plans, and there was no indication that they were subject to subsequent revision. Characterizing the alleged breach as an "omission" suggests that Northrop simply overlooked these benefits in its comprehensive termination of the plans. But Northrop understood that in not purchasing annuities it would have to fund whatever benefits accrued through the trust fund. The decisions to take that course were affirmative actions that were completed in 1971 and 1981 for Plan I and Plan II respectively. Cf. Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992) (holding that limitation period ran from the date of the challenged amendment's adoption); Ziegler v. Connecticut General Life Ins. Co., 916 F.2d 548, 551 (9th Cir. 1990) (holding that alleged breach occurred at the time of the execution of the challenged investment agreement). Though these cases do not address the omission argument directly, they reflect the view that these violations occur when the company makes the decision how to fund benefit plans.

8

Applying this determination to Mrs. Christensen's claims in Counts II and IV, they are clearly time-barred. As indicated, the actions of which she complains occurred in 1971 and 1981, and she did not bring suit until 1996, after § 1113's six-year statute of limitations had run. We therefore affirm the district court's dismissal of these claims on statute of limitation grounds.

B.

Reviewing de novo the district court's dismissal of Mrs. Christensen's denial of benefit claims in Counts I and III of her complaint involves interpretation as a matter of law of the terms of the two pension plans as applied to the situation created by Mr. Christensen's death in 1994. In that process,"we must interpret the [plan] using ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense." Bailey v. Blue Cross & Blue Shield of Virginia, 67 F.3d 53, 57 (4th Cir. 1995) (citations omitted). We take the two Plans in turn.

1.

Under the terms of Plan II, in order to qualify for the pre-retirement death benefit the employee must have died "prior to his termination of employment from the Company for any reason." J.A. 145. "Company" is defined in the plan as "Northrop Corporation (including any unincorporated division thereof) and any affiliate or subsidiary in which Northrop Corporation owns more than 80% of the voting stock and any other controlled trade or business . . . ." J.A. 130. It is undisputed that when he died, Mr. Christensen was not working for Northrop or any organization that could fit within this definition, and therefore Mrs. Christensen cannot be eligible for benefits under that plan. See Larson v. Northrop Corp., 15 E.B.C. 2107, 1992 WL 249790 (D.D.C. Mar. 30, 1992), aff'd, 21 F.3d 1164 (D.C. Cir. 1994) (holding that former Gafco employee's employment relationship with Northrop ended under terms of Plan II when Northrop sold Gafco to AICI).

Mrs. Christensen relies upon a number of cases that are inapposite because they construe pension plan terms that are critically different from the terms of Plan II. For example, in Tilley v. Mead Corp., 927

9

F.2d 756, 761 (4th Cir. 1991), we held that ERISA did not prohibit workers from receiving benefits under a pension plan that did not vest until after the plan was terminated. However, under the terms of that plan, employers' rights could vest after the plan was terminated. Id. at 762-63. Similarly, the plan construed in Gillis v. Hoechst Celanese Corp., 4 F.3d 1137 (3d Cir. 1993), did not explicitly provide that benefits could only be paid if the employee was still employed by that employer, as Plan II does. In sum, under traditional principles of contract interpretation, Mrs. Christensen is not eligible for benefits under the terms of Plan II.[5]

2.

The eligibility requirements for pre-retirement death benefits differ under Plan I. Under that plan, the benefit accrued if, "as of the time of his death," the employee had reached his 60th birthday, completed 10 or more years of service, had met the marital requirements and "was continuing in the Service of any of the Employers." J.A. 56A. Only the last of these criteria is contested by Northrop. Under Plan I's definition, "Employers" is defined as"The Company . . . and such other organizations as may hereafter adopt the Plan and Trust in accordance with Article XIV, and their successor or successors." J.A. 53. Mrs. Christensen does not argue that Northrop or anyone else "adopted" the plan in accordance with Article XIV. Plan I, however, defines "Company" as Gafco, "or its successor or successors." J.A. 52. And while the plan does not specifically define"successor," with regard to corporations, "generally [the term] means another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of first corporation." Black's Law Dictionary 1431 (6th ed. 1990). Under this

_____

[5] Mrs. Christensen also contends that under our holding in Tilley, she is eligible to be paid from the surplus assets that reverted to Northrop at the termination of Plan II. We held in Tilley that an employer was responsible for funding all contingent assets that could vest under the plan before recovering any surplus. In that case, however, the employees claiming the benefits were eligible for them under the terms of the plan; Tilley does not provide support for funding benefits that would not accrue under the terms of a plan before accepting a surplus. See 927 F.2d at 759-62.

10

definition, both Northrop and AICI are successors to Gafco and hence are included within the definition of "Company."

Northrop does not contend that neither it nor AICI was not Gafco's successor. The district court did not consider the significance of this route to Northrop's liability under the Plan, but held narrowly that "At the time of his death, Mr. Christensen was employed by AICI. No other entity ever adopted Plan I, and it terminated in December 1971. Plaintiff is thus no more entitled to pre-retirement death benefits under the terms of Plan I than under Plan II." J.A. 34. In so holding, the district court apparently interpreted the phrase "and their successor or successors" as only modifying the clause "organizations as may hereafter adopt the Plan," and did not consider whether Northrop could be considered as itself the "Company" under the definitional provisions above noted. Northrop clearly, however, falls within those definitions as successor to Gafco, therefore as the "Company," therefore as "any of the Employers." Under the terms of Plan I, therefore, Mr. Christensen met the requirements for pre-retirement death benefits, and Northrop, which acknowledged responsibility for paying any pre-retirement death benefits that accrued under Plan I, see J.A. 205, is responsible for paying them.

3.

Northrop also contends alternatively that the statute of limitations had run as to the denial of benefits claims in Counts I and III. In those counts Mrs. Christensen alleged generally that Northrop improperly denied her benefits under Plans I and II. Northrop seeks to cast these allegations as reconstituted fiduciary duty claims, based on the failure to fund pre-retirement benefits through annuities. That will not do. These claims were that Northrop breached the terms of Plan I and Plan II by refusing to award Mrs. Christensen death benefits, whether or not the payment would come from an annuity or from the plan's trust fund. Mrs. Christensen therefore had no cause of action until Northrop denied her benefits after Mr. Christensen's death in 1994. See Rodriguez v. Meba Pension Trust, 872 F.2d 69, 72 (4th Cir. 1989) ("An ERISA cause of action does not accrue until a claim of benefits has been made and formally denied.") (citations omitted). Conse-

11

quently, the applicable statute of limitations had not run on these claims when she brought suit in March 1996.**6**

III

We affirm the district court's grant of summary judgment in favor of Northrop on Counts II and IV on the ground that the applicable statute of limitations had run before Mrs. Christensen filed this action. We also affirm the district court's grant of summary judgment in favor of Northrop as to Count III, because Mrs. Christensen did not meet Plan II's eligibility criteria. We reverse the district court's grant of summary judgment in favor of Northrop as to Count I, and the denial of Mrs. Christensen's motion for summary judgment as to that count, because Mrs. Christensen met all of the requirements for pre-retirement death benefits under Plan I. We remand for entry of judgment accordingly.

<u>AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS</u>

_____

**6** Section 1113 of ERISA does not provide the statute of limitations for claims alleging an improper denial of benefits, however. Rather, because ERISA does not provide a statute of limitations for denial of benefits claims, we look to the most analogous state statute of limitations. <u>See</u> <u>Schroeder v. Phillips Petroleum Co.</u>, 970 F.2d 419, 420 (8th Cir. 1992); <u>Jenkins v. Local 705 Int'l Broth. of Teamsters</u>, 713 F.2d 247, 251 (7th Cir. 1983). We have previously held that the statute of limitations for actions alleging a breach of contract is the most analogous state statute. <u>See Cotter v. Eastern Conf. of Teamsters Retirement Plan</u>, 898 F.2d 424, 428 (4th Cir. 1990). As such the statute of limitations for Mrs. Christensen's claim is that for breach of a written contract in Virginia: five years. <u>See</u> Va. Code Ann. § 8.01-246 (Michie 1992).

12